DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY.

AT NOVEMBER TERM, 1857.

---

### ASA MOORE *vs.* JONATHAN RAKE.

1. The deed of a married woman, duly acknowledged, made without the co-operation of her husband, will not pass her title to real estate.

2. A remainder in fee, limited upon an estate tail, is a vested remainder, and upon the death of the remainderman, pending the estate tail, descends to his children by virtue of the statute, and not according to the rule of the common law.

3. The deed of a person not entitled to the land, at the time it was made, if it contain a covenant of general warranty, operates, by way of *estoppel*, to convey any estate to which he at any time afterwards becomes entitled, and which would otherwise descend to his heirs.

---

In error to the Hunterdon Circuit.

This was an action of ejectment in the Circuit Court of the county of Hunterdon, brought to recover the premises which were the subject of the action in the case of *Den* v. *Lawshee,* 4 *Zab.* 613. The same facts were given

in evidence as in that case, together with some others not necessary to notice, as in the opinion of the court they did not affect the result. The judge of the Circuit Court instructed the jury to find a verdict for the defendant, to which instruction the plaintiff excepted, and a bill of exceptions being sealed, a writ of error was brought to this court, the error assigned and relied on being the charge of the court.

Argued by *Halsted*, for plaintiff in error, who insisted—

1. The will and codicil ought to be interpreted so as to give Isaac Fox an estate in fee simple. The words, before the age of twenty-one, were evidently omitted in the codicil by mistake, and ought to be considered as inserted so as to carry out the intention of the testator. *Den* v. *Combs*, 3 *Harr.* 27; *Spenc.* 151; 1 *Zab.* 480.

2. But supposing that Isaac Fox took an estate in fee tail, Eve Godown's remainder descended on her death to her two children, Isaac and Adeline, and plaintiff is entitled to one half under Isaac. *Den* v. *Manners, Spenc.* 142; 4 *Kent's Com.* 255.

3. Eve Godown's deed was sufficient to pass the remainder to the plaintiff. Such is the plain meaning of the act, which says nothing about the husband. The original act was different. 1 *All. L. N. J.* 133, § 3. A married woman could pass her estate in England by a fine and recovery. Our act, (*Paterson's Rev.* 398, § 4,) meant to give the same power. Immediately after passing this act, fines and recoveries were abolished. *Pat. Rev.* 411; *Clancy Mar. Wom.* 163, 177; 2 *Bac. Ab.*, "*Baron and Feme*" *I.*, *p.*, 50; *Fire Ins. Co.* v. *Bay,* 4 *Barb. S. C. R.* 407; 4 *Comst.* 9.

*P. I. Clark,* for defendant, insisted—

1. An estate in fee was given to Isaac, with an executory devise to Eve Fox. *Ferne* 449. Isaac's deed conveyed only his contingent estate, which ceased on his death. His deed transferred nothing but what he was seized of. He

was not the heir of Eve until the contingency of her death happened. *Vincent* v. *White*, 15 *East* 174. The law would be the same if Isaac took an estate tail with a contingent remainder to Eve Godown.

2. Eve Godown being a married woman, her deed did not operate. Such has always been the construction of the statute in New Jersey.

*Randolph*, on the same side, insisted—

1. This was an estate tail or for life in Isaac Fox, with an executory devise to Eve Fox. No case authorizes the court to interpolate words in a will where the sense is complete as it stands.

2. Isaac Fox's estate terminated at his death. A contingent estate descends. *Goodtitle* v. *Wood*, *Willes* 211; *King* v. *Withers*, *Cases Tal.* 117. His estate descended to Adeline, and not from the mother to Isaac and Adeline. 2 *Pow. Dev.* 246–7; 15 *East* 174; 2 *Black. Com.* 177; 2 *Wils.* 29.

Eve's deed was void. 4 *Cruise, title* 32, *ch.* 2, §§ 29, 30. Our statute did not change the common law. By the English law, a wife could not acknowledge a fine alone. 5 *Cruise*, "*Fine*," § 7; and see 26 *E. L. & E. R.* 292. The case in 4 *Comstock* is not in point, the New York statute being different from ours; at any rate, that case is no authority here; the reasoning of the dissenting judge is most satisfactory.

The CHANCELLOR. This cause comes here upon a writ of error to the Circuit Court of the County of Hunterdon. It brings up a bill of exceptions, taken by the plaintiff during the trial of the cause. The errors assigned are upon these exceptions. Two questions only are raised; one, involving, in a measure, the construction of the will of one Jacob Fox, deceased, and the other, the power of one Eve Godown to make a valid conveyance of her interest in the land in controversy.

Jacob Fox, by his will, devised to his son, Isaac Fox, an estate in fee simple in the land in dispute. He afterwards made a codicil to his will, by which he limited this estate by a devise over to his wife, Eve Godown, in the event of his son's dying without lawful issue.

This is the language of the codicil: "And I do further give and *bequeath*, if my beloved son, Isaac Fox, should die without lawful issue, then I give and *bequeath* all my lands unto my beloved wife, Eve Fox, to her, her heirs or assigns forever."

It was contended, on behalf of the plaintiff in error, that the testator meant, if his son Isaac should die *under the age of twenty-one* without lawful issue, then that the estate should go to his wife Eve; and that Isaac having arrived at the age of twenty-one, the estate became absolute in him. There is no warrant whatever for the interpolation of the words proposed. It is true, if the testator intended that the estate should become absolute upon Isaac's arriving at twenty-one, the court would see that such intention was carried into effect, and would supply, for that purpose, any words that had been ignorantly or inadvertently omitted in the draft of the will. But there is nothing in this will or codicil to lead to a doubt, even, but that the language used conveys the meaning of the testator. The will is brief, and embraces but few objects. There is no confusion in the language to lead to a doubt of the testator's understanding its import. It clearly declares that if his son Isaac should die without lawful issue, then it is the testator's will that the lands devised to him should go to his wife Eve.

Jacob Fox, the testator, died in 1795, and his will and codicil were admitted to probate shortly after. Eve, the widow of the testator, was married to Thomas Godown on the 4th of January, 1801, and had a daughter, named Adeline, who intermarried with Jonathan Rake, the defendant. On the 22d of October, 1828, Eve and her son

Isaac Fox, joined in a conveyance of the premises in dispute to Asa Moore, the plaintiff.

Two questions arise in reference to this deed. First, whether the execution of the deed by Eve Godown was valid, her husband not having joined with her in its execution; second, whether Isaac Fox had any interest in the land which the plaintiff can now claim under that deed.

Previous to the year 1743, a *feme covert* could not make a valid conveyance of her interest in land in the then colony of New Jersey. By an act of December 3d, of that year, (1 *Allinson* 133, § 3,) it was enacted, "that all deeds or conveyances made, or to be made, by a man and his wife, of the estate of the wife, or the right of dower of the wife," when acknowledged in a particular manner before certain officers, should be recorded, and should be good and sufficient to convey the lands thereby intended to be conveyed. It is true the act does not, in terms, declare that the deed shall be a *joint* deed of the husband and wife, but it plainly implies this, and such is its natural and fair construction; it declares that all deeds made by a *man and his wife* shall be sufficient to convey the lands. A deed made by the wife alone is not embraced in the language of the statute, nor is such a deed within its meaning. This does not give to a *feme covert* the right, without any qualification, of making a deed of any estate or right which she may have in land, but only makes a deed or conveyance of such estate, or right, made by a *feme covert and her husband*, good and sufficient to convey the lands, estate or rights thereby intended to be conveyed."

The next legislative enactment upon this subject was in 1799. The act is to be found in *Paterson's Revision* 398.

This act gives no new or additional power to a *feme covert*, in reference to the alienation of her interest in land by deed. It recognizes the power of alienation then existing. It existed only by virtue of the act of 1743; and the act

of the 7th of June, 1799, does nothing more than declare that such deed or conveyance, which she is authorized by law to make, shall be by her acknowledged on a private examination apart from her husband, with certain specifications as to what such acknowledgment shall contain or embrace. The language plainly is the regulation of an existing right, restricting and not enlarging the right as it existed, and does not confer any additional right upon the wife. If the act of 1743 required the deed to be a joint deed, there is nothing in the act of 1799 to alter this character of the conveyance.

If this were a question of construction, for the first time to be put upon the statute, my opinion would be that it was requisite for the husband to *join* with the wife in the execution of the deed. But I believe such has been the construction given to the statute by our courts, and by the profession at large, whenever the question has received consideration. Mr. Griffith, in his treatise, (*Law Register*, vol. 2, 1206,) has this comment in a note upon the statute: " Whether a separate deed, executed, &c., by her in this manner, would bar her dower or convey her estate, has not been decided. The general opinion has always been, that the husband must *join* in the execution of the conveyance, upon the principles of the common law, that a wife can do no valid act in respect of property in which the husband has an interest, without he is privy and party to it; and from the mischievous consequences that might result from allowing the wife to convey her real estate as if she were a *feme sole*, and without, or even against the consent of her husband, it is supposed the act cannot receive this construction, and, in reality, that the expressions imply that the husband is a party to the deed under execution, as she is to be *privately examined apart* from him." In an ejectment suit in the Circuit Court of the United States for the District of New Jersey, of Den, ex dem. Liddel, *v.* Arrowsmith, in 1832, Mr. Justice Baldwin gave a like construction to the statute,

and would not admit in evidence to the jury a deed executed by the wife alone, although it was executed with the consent of her husband, who had himself executed a prior deed for the land to the same grantee.

In the case of the deed under consideration, there was proof that the husband was a man of intemperate habits; that his mind was disordered; that he became deranged; that he left his wife, and that they lived separate and apart a long time before the deed was executed, and so lived' until his death, in 1841. These circumstances cannot, in the least degree, affect or vary the right of the wife as to the execution of the conveyance. The deed, so far as Eve Godown was concerned, was inoperative, and did not convey any interest she might have had at the time in the property. In the case of *Isabella Grierson, Perrin* 26 *E. C. L. & Eq.* 292, the husband's concurrence was dispensed with by an order of the court under 3 and 4 *Will.* 4, c. 74.

Upon the other points in the case, I concur in the opinion of Judge Vredenburgh, and that the remainder in fee to Eve Fox (afterwards Eve Godown) was a vested remainder; that, at the death of Eve, by force of the statute, her estate in remainder descended equally to her heirs-at-law, Isaac Fox and his sister Adeline, wife of the defendant in error, Jonathan Rake, in equal shares; that, upon the death of Isaac without issue, Adeline became entitled, as one of the heirs-at-law of her mother, to one equal undivided half of the land, and as the heir of Isaac, to the other half; that Isaac Fox was estopped, by his deed of warranty to the plaintiff, from denying the title which he had conveyed to the plaintiff, and that this deed now operates as an estoppel against his sister Adeline, as his heir-at-law.

The judgment of the court below must be reversed.

ELMER, J.   The decision of this case in the Circuit Court was in conformity to the opinion of the Supreme Court

on the same title, in the case of *Den* v. *Lawshee*, 4 *Zab.* 613. I concurred in that opinion, and not Judge Potts, as is stated in the report. A careful review of the questions involved, since the argument in this court, has satisfied me that the opinion then given was erroneous.

Isaac Fox, by the original will of his father, Jacob Fox, made in 1795, took an estate in fee simple in the disputed premises. But the codicil of the same year, after confirming the will, adds, "I do further give and bequeath, if my beloved son, Isaac Fox, should die without lawful issue, then I give and bequeath all my lands unto my beloved wife, Eve Fox, to her, her heirs or assigns forever." This is the ordinary case of a devise in fee, with a limitation over upon an indefinite failure of issue; thus constituting an estate in fee tail in Isaac Fox. *Den* v. *Small*, *Spenc.* 151; *Morehouse* v. *Cotheal*, 1 *Zab.* 480; 4 *Kent* 274. The remainder in fee to Eve Fox was a vested remainder. Eve Fox was a person in being who would have had an immediate right to the possession of the land upon the death of Isaac Fox without issue. Her right was a present fixed right of future enjoyment. 4 *Kent* 202; *Crabb's Real Property*, § 2331; *Badger* v. *Lloyd*, 1 *Sal.* 232; *Ives* v. *Legge*, 3 *Term R.* 488.

Eve Fox married Thomas Godown, and by him had a daughter, Adeline, wife of the defendant Jonathan Rake. After Isaac Fox arrived at the age of twenty-one, and during the lifetime of Thomas Godown, he and Eve Godown joined in executing a deed to Asa Moore, the plaintiff, with a covenant of warranty, her husband not being a party to it.

This deed did not operate to pass the estate in remainder vested in Eve Godown, in consequence of her being a married woman. The statute authorizing a married woman to acknowledge a deed in a particular manner (*Rev. Laws* 458, § 4,) did not alter the well-established rule of the common law, that the legal existence of the wife is merged in that of her husband, so that, except in peculiar

cases, she can make no contract without his consent. Such has, undoubtedly, been the general understanding of the profession from the time the statute was passed, and so the courts have several times decided at the circuits. The same construction, it is understood, was adopted by the Court of Errors, at May Term, 1836.

Eve Godown died during the lifetime of Isaac Fox. According to the rule of the common law, the ancestor from whom the inheritance was taken by descent must have had actual seizin of the lands, so that upon her death the remainder, vested in Eve Godown, would have descended to Isaac Fox alone, Adeline being no heir of Jacob Fox, the person last actually seized. But our statute of descents in force when Eve died, which enacts " that when any person shall die seized of any lands, &c., in his or her own right in fee simple, without devising the same," they shall descend equally to his or her lawful children, applies to this case. Die seized, in this statute, may fairly be interpreted to mean dying lawfully seized, which Eve Godown was ; and, therefore, her estate in remainder, which she held in her own right in fee simple, descended to her two children, Isaac Fox and Adeline Godown, in equal shares. This construction was put on a similar statute of Massachusetts, after an elaborate argument, by Judge Story, in the case of *Cook* v. *Hammond*, 4 *Mason* 467 ; and the Supreme Court of Massachusetts decided the question in the same way. *Miller* v. *Miller*, 10 *Metc.* 393. Kent assumes the same construction of the New Jersey statute. 4 *Kent* 388. In the case of *Den* v. *Manners, Spenc.* 142, the Supreme Court held, in effect, the same doctrine, although the reasoning of the court seems to be different. The estate in remainder, which descended to Isaac Fox upon the death of his mother, did not merge in his estate tail, but remained a separate and distinct estate. 2 *Black.* 178 ; *Crabb*, § 2451.

It follows, therefore, that upon the death of Isaac Fox without issue, Adeline Rake became entitled to the pos-

Moore v. Rake.

session of an equal undivided half part of the property, as one of the heirs of her mother; and had Isaac executed no conveyance of the property, the other half would have descended to her as his heir. But Isaac Fox having executed a deed to the plaintiff before half. of the estate in remainder descended to him by the death of his mother, that deed not only conveyed his estate tail to the whole premises, which ceased at his death, but operated also to convey the undivided half which afterwards descended to him. His deed contained a covenant of warranty, and operated, by way of estoppel, to convey such part of his estate as would have descended to his heirs. *Greenleaf*, in a note to his edition of *Cruise*, *title* 32, *ch.* 26, § 51, states the law to be, that a covenant of general warranty, if the grantor had no title at the time, estops him, and those claiming under him, from afterwards claiming title to the land; for it is a general principle, deducible from all the authorities, that an instrument which legally creates an estoppel to a party undertaking to convey real estate, he having nothing in the estate at the time of the conveyance, but acquiring a title afterwards by descent or purchase, does in fact pass an interest and title from the moment such estate comes to the grantor. This rule is altogether reasonable, and is introduced to prevent circuity of action. Isaac Fox having warranted the title, if Adeline Rake should be permitted to recover that part of the land which descended to her as his heir, she would be responsible to answer in damages to the grantee, Asa Moore, for the value, so that to allow her to take the land, would result only in requiring her to pay for it. The undivided half which descended to her, as one of the heirs of her mother, she holds clear of any warranty given by Isaac Fox, and to that she is entitled.

The result is, that the plaintiff was entitled to recover an undivided half part of the premises, and the instruction of the judge, that a verdict should be found for the

defendant, was erroneous.   The judgment must therefore be reversed.

VREDENBURGH, J. Both parties claim title under the will of Jacob Fox, dated 29th June, 1795, and a codicil thereto, dated the 11th August, in the same year.

The material clause in this will is, " Item, I give and devise to my son Isaac, his heirs and assigns, all that my messuage and tenement whereon I now live, to hold to him, his heirs and assigns forever."

In the codicil, he says, "And I do further give and bequeath, if my son Isaac should die without lawful issue, then I give and bequeath all my lands unto my wife Eve, to her, her heirs and assigns forever, and that this codicil be adjudged to be part of my last will and testament."

The testator died in 1795. Isaac continued in possession under the will until 22d February, 1828, when he and his mother, by joint deed of bargain and sale, with general warranty, conveyed the premises to the plaintiff.  Isaac Fox died in October, 1843, without ever having been married. His mother, Eve, in 1801, married Thomas Godown, by whom she had one child, Adeline, born in 1803, and who, in 1822, married the defendant.  Eve died in 1832, and her husband, Godown, in 1841.  The plaintiff continued in possession until 1854, when the defendant, in right of his wife, Adeline, obtained possession.

The case raised two questions : first, what right does the plaintiff show under the devise to Isaac; second, what, under the devise to Eve.

*First.* By the deed from Isaac and Eve, dated in February, 1828, the plaintiff acquired all the right of Isaac under the will by virtue of the direct devise to him.   But as this interest of Isaac, whatever we may call it, ceased at his death, in 1843, so did the plaintiff's, and he can trace no title through that source.

*Second.* What title does the plaintiff show under the devise to Eve?   In order to answer this question we must

first determine what estate Eve took under the will; and secondly, the effect upon her estate of the deed from her and Isaac to the plaintiff, in 1828, and of her death afterwards, living Isaac, and of his death afterwards, living his half-sister, Adeline.

*First.* Before we can ascertain Eve's estate, we must first settle what Isaac's is. The testator gives him in the will a fee, and in the codicil says, "if my son Isaac should die without lawful issue, then I give all my lands to my wife Eve, to her, her heirs and assigns forever."

It is perfectly well settled that, at the date of this will, this language gave to Isaac an estate tail. No case, I apprehend, can be found where this precise language has not been construed to give such an estate. In the case of *Den* v. *Taylor*, 2 *South.* 417, Ch. Just. Kirkpatrick says, in delivering the opinion of the court, that "it is as well settled that a devise to one and his heirs, and if he die without issue then over, creates an estate tail, as if the principal devise had been in the most technical language to him and the heirs of his body." This same language is quoted by Ch. Just. Hornblower as undoubted law, in *Den* v. *Snitcher*, 2 *Green* 59. It is the precise language adjudicated to create an estate tail in *Den* v. *Small*, *Spenc.* 152, and of *Morehouse* v. *Cotheal*, 1 *Zab.* 480. It is recognized as law in *Den* v. *Schenck*, 3 *Halst.* 39; *Den* v. *Allaire*, *Spenc.* 6, and in all the cases I have seen, whether recent or more remote.

If Isaac's interest under the will is an estate tail, Eve's must be a remainder, and cannot be an executory devise. What kind of a remainder, vested or contingent? Upon this, I apprehend, there can be as little doubt as upon the previous question, that it is a vested, and not a contingent remainder. The will gives an estate to Isaac and his issue indefinitely. This is but part of the whole fee. He then gives the balance to Eve and her heirs forever. In the nature of things, this remainder must be as much vested as the particular estate. It may, indeed, never vest in

possession, but so it is with every remainder. But the inter-
est is subject to no contingency. An estate is vested when
there is an immediate fixed right of present or *future* enjoy-
ment. *Ferne on Remainder* 2.

The law favors the vesting of remainders, and does it at
the first opportunity.

It is the *present* capacity of taking effect in possession,
if the possession were to become vacant, that distinguishes
a vested from a contingent remainder. *Greenleaf's Cruise,*
*title* 16, *Remainder, ch.* 1, § 8, *note* 2; *Ferne on Rem.* 277;
4 *Kent* 202.

It is the uncertainty of the right which renders a re-
mainder contingent, not the uncertainty of the actual enjoy-
ment. *Williamson* v. *Field,* 2 *Sandf. Ch. R.* 533; *Vander-*
*huyden* v. *Crandall,* 2 *Denio* 18; 1 *Comst.* 491.

A remainder limited upon an estate tail is held to be vested,
though it is uncertain if the possession will ever take place.
4 *Kent* 203; *Badger* v. *Lloyd,* 1 *Salk.* 232; 1 *Ld. Raym.*
523; *Ives* v. *Legge,* 3 *Term R.* 488; *Greenleaf's Cruise, title*
16, *Remainder, ch.* 1, § 8, *note* 2.

Do the statutes of 1784 and 1786 make a remainder con-
tingent that before would have been vested? They provide
that the estate tail shall be enlarged to a fee in the second
descent. This may render the remainder defeasible, but
does not make its creation depend upon any contingency.
It vests the same as before, subject to be defeated by
the tenant in tail leaving issue; and so it has been taken for
granted in all the cases reported since the passage of those
acts.

Having thus ascertained that Eve's interest under this will
is a vested remainder expectant upon the failure of Isaac's
issue, the next inquiry is, what effect her and Isaac's deed to
the plaintiff, on the 22d February, 1828, her death after-
wards, in 1832, living Isaac, and his death afterwards, in
1843, living his half-sister, Adeline, had upon this vested
remainder?

And first, what was the effect of Eve's execution of the

deed? She was at the time à married woman, and her husband has not joined in the conveyance. Whatever might have been our conclusion under our statute upon this subject, if the question had now for the first time arisen, we feel bound by the authority of the case of Burnhans *v.* Van Houten, decided in the old Court of Errors, May Term, 1836, to say that Eve's execution of this deed without the consent of her husband was a void act, and that, of course, it did not affect her remainder; that, so far as her deed was concerned, continued as it was before.

In the next place, what was the effect upon this remainder of the execution of this deed by Isaac? At its execution Isaac had no right in this remainder; it all belonged to his mother. His deed, therefore, as a mere conveyance, passed no interest in it; he owned no part of it to pass; it conveyed his interest as tenant in tail, but no part of the remainder.

But there is in this deed this covenant: "And they, the said party of the first part, for themselves, their heirs, executors and administrators, do covenant, promise and grant, to and with the said party of the second part, that they, the said party of the first part and their heirs, all and singular, the premises hereby granted, with the appurtenances, unto him, the said party of the second part, his heirs and assigns, against them, the said party of the first part, and their heirs, against all and every other person or persons whomsoever, shall and will warrant and forever defend."

It will be observed that this covenant is not one of special warranty against the grantor only and his heirs, but one of general warranty against all persons whomsoever. A general covenant of warranty, if the grantor has no title at the time, estops him from afterwards claiming title to the land. And an instrument which legally creates an estoppel to a party conveying, he having no estate at the time, but acquiring a title afterwards by descent or purchase, does in fact pass an interest and a title from the

moment such estate comes to the grantor.    And this prin-
ciple applies equally against all others claiming in *privity*
with the grantor.    *Greenleaf's Cruise, title* xxxii., *Deed, ch.*
26, § 51, *note* 1, where a very large collection of cases upon
this point will be found.    4 *Mason* 491, 467 ; *Vanderhuyden*
v. *Cranston,* 2 *Denio* 9 ; 1 *Comst.* 491 ; *Sommes* v. *Skinner,* 3
*Pick.* 59 ; *Comstock* v. *Smith,* 13 *Pick.* 119 ; *Weale* v. *Lowber,*
*Pollex.* 66.

What, now, is the effect of this doctrine upon the case
before us ?    In 1828 Isaac conveyed this land to the plain-
tiff with general warranty.    That, at the time, passed not
only the estate tail which he then had, but also, by way
of estoppel, all the estate and right which he might after-
wards acquire at any time during his life, either by descent
or purchase.    Did Isaac, during his life, acquire any fur-
ther estate, and if any, what, which would pass to his
grantee by estoppel ?    In 1832 his mother Eve died, leav-
ing him and his half-sister Adeline her only issue her sur-
viving.    At Eve's death what became of her vested remain-
der ?    If the whole, or a moiety of it descended to Isaac, it
passed, by force of the principle above stated, immediately
to the plaintiff.

Eve, at her death, had such a seizin of this vested remain-
des as to make her a stock of descent, or she had not.    If
she had not, then the defendant shows no title as her heir,
and the plaintiff must recover, either on the strength of
his previous possession or as grantee of Isaac, as heir of his
father.    If she, as it is evident, had, and as the dispute itself
supposes, what became of her interest at her death, in 1832 ?
Did it fly *in nubibus,* and there remain until the death of
Isaac, in 1843, or did it descend immediately on her death
to her heirs ?

The law, for obvious reasons, favors the immediate
vesting of estates, and does it at the earliest possible mo-
ment.    It never permits an interest to be in abeyance
where there is any person *in esse* to take.    It is the univer-

Moore v. Rake.

sal principle of inheritable interests to descend, upon the death of the owner, immediately to the heir.

Immediately upon Eve's death, then, her estate descended to her heirs. Who were her heirs? This will depend upon whether her estate descended under the statute of descents or at the common law. If the latter, Isaac alone was her heir; if the former, Isaac and Adeline were her heirs, as tenants in common, each taking an undivided moiety.

Was the descent from Eve, in 1832, under the statute of descents? The statute then in force (*Rev. Laws* 608, § 1,) provides that, when any person shall die seized of any lands, tenements, and hereditaments in his or her own right in fee simple, leaving two or more children, such lands shall descend and be equally inherited by all the children of such person in equal parts.

In order to bring this descent within the statute, the intestate must be seized in fee simple.

Is a remainderman expectant upon an estate tail seized in fee simple within the meaning of the act? Although the term seized originally was used in its literal sense, yet, like other words and terms, it gradually obtained more figurative meanings, and long before the passage of this statute, a person was said to be seized who had a present vested freehold interest in lands. Was she seized in fee simple? It is said, in 2 *Bl. Com.* 106, that the term fee simple is used in contradistinction to a fee conditional at the common law, or a fee tail by the statute. And such, I think, must have been the sense in which the legislature used it in this statute. Such has always been the construction put upon it by our courts and in practice. It has never been doubted but that a person with a remainder in fee, or a reversion in fee, or with a base or defeasible fee, dying intestate, that his lands descended under the statute. If it were not so, all lands held under a defeasible fee, or by tenant in curtesy, or dower, or for life, in case of the person in remainder dying during the particu-

lar estate, would descend, at common law, to the oldest son, and not to all the children equally. This was so expressly decided, even with respect to a reversion in fee waiting upon both an estate tail and a contingent remainder in fee, in the case of *Holcombe* v. *Lake*, 4 *Zab.* 686, and affirmed in this court. 1 *Dutcher* 605. It was further decided, in this case of Holcombe *v.* Lake, that the reversion in fee descended, not at the time of the death of the tenant in tail, nor at the death of those in whom the remainder might vest upon contingency, but at the death of the person entitled to the reversion.

Upon Eve's death, in 1832, one moiety of this land descended to, and was inherited by Isaac, and he was seized thereof in fee by force of the statute. He was not the less entitled to the moiety in remainder because he was at the same time tenant in tail. The two interests were not like those in the case of *Vincent* v. *White*, 15 *East* 173, and the others cited by the defendant's counsel, successive but concurrent estates; and, but for the operation of the statute *de donis*, the estate tail in Isaac would have merged, as to his moiety, in his remainder. This moiety of the remainder, thus vesting in Isaac in fee at his mother's death, and after his conveyance passed immediately, by force of his warranty, to the plaintiff.

If Adeline, then, claims this moiety as heir of Isaac, she is estopped by his warranty. If she can hold this moiety, therefore, at all, it must be as heir of Eve, and not as heir of Isaac. But Adeline contends that, upon Isaac's death, the estate tail and the descent cast upon him by his mother's death, both disappeared, and that she comes in for the whole, not as the heir of Isaac, but as the heir of her mother; that Isaac's interest, as to this moiety, descended not from Isaac to her, but passed back to his mother, and so to her. In order to do this, she must show two things— first, that Isaac was not so seized of his moiety as to become a new stock of descent; and, secondly, that he was not so seized as that he could convey it by estoppel.

Upon the first question she invokes this principle of the common law, that if the person who owns the remainder or reversion expectant upon the determination of a freehold estate dies during the continuance of the particular estate, the remainder does not descend to his heirs, because he never had a seizin to render him the stock of an inheritance. But if she stands on this, then Eve could not be a stock of descent, and the plaintiff would be let in by virtue either of his former possession or as holding under Jacob Fox; so that she must go a step further, and show that although Eve was a new stock of descent, yet that Isaac was not: and to this end she invokes this further principle of the common law, that whenever a party succeeds to an inheritance by descent, he must have obtained an actual seizin or possession, as contradistinguished from a seizin in law, to make himself a root of inheritance, and that here, although the inheritance was cast upon Isaac at his mother's death, yet that he had no actual possession during his life. *Greenl. Cruise, title* 29, *Descent, ch.* 4, § 1, *note.*

To this, it appears to me, several answers may be given. In the first place, I have never understood that this doctrine has been applied in this state to vested remainders. As to them, seizin has been used as synonymous with title, and independently of our statute of descents, vested remainders have always descended in the same way and to the same persons as if they had been estates vested in possession. *Den* v. *English*, 2 *Harr.* 280.

In the next place, if any such principle ever prevailed in this state it was abolished by our statute of descents. The defendant must admit that Eve was seized in fee simple, otherwise she has no inheritance, and the whole land goes to Isaac as heir of his father, or as sole heir of his mother, at common law. If Eve, then, was so seized as that at her death it descended, Isaac had the same vested right in the estate as she had, except that at common law, if he died during the particular estate, it would

not descend to his heirs. He was seized in fee simple precisely as his mother was; but the defendant says, true, but he was not seized in fact, he had no actual possession. But the act, using seizin as synonymous with title, says that although not descendible at common law to Isaac's heirs, yet it shall be so by this statute. The statute, therefore, on Isaac's death, threw the descent, as to his moiety, upon Adeline. She must claim this moiety as his, and not as her mother's heir. Thus claiming, she is estopped by Isaac's deed.

But again, this principle applies to cases where there was no actual possession or entry by the intermediate heir. But here Isaac was in actual possession by his grantee. He was in actual possession of his estate tail till his mother's death, and after that, also, of the remainder in fee. His grantee's possession, with his warranty, was his possession.

But again, Adeline can only claim as heir of her mother as to this moiety, provided the remainder had continued in a course of devolution by descent. The *mesne* heir, without actual seizin, may at common law, by grant, devise, charge, or other act of control over the property, constitute a new stock of descent. Here this was done by Isaac, by his deed with general warranty. He sold the land with warranty, and when the inheritance descended on him, that passed immediately by estoppel to his grantee. *Greenl. Cruise, title* 29, *Descent, ch.* 3, § 1, *note;* 2 *Denio* 9; 1 *Comst.* 491; 4 *Mason's R.* 491; 4 *Mason's R.* 467.

This is in fact but the case of *Holcombe* v. *Lake*, 4 *Zab.* 674, decided in the Supreme Court, and affirmed here unanimously afterwards, in 1 *Dutcher.* There Richard Holcombe, in 1784, devised land to his son John in tail, with contingent remainder to his daughters, if they survived their brother. They died first; the remainder vanished, and there remained out of the testator only the estate tail. John died without issue, devising his interest. The question was between the devisee of John and the sister's children.

the courts decided that upon the death of the testator, Richard Holcombe, the reversion in fee descended to the tenant in tail, and was devisable by him; so here, when Eve died, the remainder vested in Isaac, ran along with the estate tail, and passed to his assigns or to his devisees. The only difference between the cases is that John Holcombe had the estate tail and the reversion in fee, and Isaac Fox the estate tail and the remainder in fee. They had both, after the death of John Holcombe's sisters, precisely the same interest, and descendible, so far as the question before us is concerned, in the same way.

The case of *Vanderhuyden* v. *Crandal*, 2 *Denio* 24, afterwards affirmed in error, (1 *Comst.* 491,) is a case very similar to the present. That was a devise to A for life, remainder in fee to B. A mortgaged the estate, with covenant of seizin in the lifetime of B. B died in the lifetime of A, and A was his heir. Held that the remainder in fee, vesting in A on the death of B, enured, by way of estoppel, to the purchaser under the mortgage.

*Secondly.* Adeline must show that Isaac was not so seized as that he could convey by estoppel. That he could so convey, however, is apparent already from the authorities we have quoted. Not only is this true with respect to a vested remainder, but Adeline would have been cut off from this moiety, even if Eve's estate had been a contingent remainder or an executory devise, which the defence, in their argument, have assumed it to be.

If this was a contingent estate in Eve, it was a possibility coupled with an interest, where the person to take was certain. All contingent estates of inheritance, or possibilities coupled with an interest, where the person to take is certain, are transmissible, assignable, and devisable. If the person be not ascertained, they are not then possibilities coupled with an interest, and they cannot be devised or descend at the common law. 4 *Kent* 260, 261. Here, if this is a contingent estate in Eve, it is possibility coupled with an interest, where the person to take is cer-

tain, and is, consequently, transmissible by descent, and being so, descended to Isaac, and passed by his warranty. 4 *Kent* 284, 262, *note a; Fearne on Rem.* 457; *Doe* v. *Oliver,* 10 *Barn. & Cress.* 181; *Greenl. Cruise, title* 16, *Remainder, ch.* 8, §§ 19, 20; *Noel* v. *Barnby,* 3 *Simmons' R.* 103; *Den* v. *Manners, Spenc.* 142. So that the only effect of considering Eve's a contingent instead of a vested interest, would be to raise the question whether these kinds of contingencies descend under our statute or at common law, and whether Adeline must lose the moiety or the whole.

The cases cited by the defendant's counsel do not meet the present. They are, in the first place, cases of successive, and not of concurrent estates; and in the second place, there is in them no question of estoppel by the mesne heir; but the contingencies continue in the regular course of devolution by descent, and the controversy is between different sets of heirs.

I am of opinion that the plaintiff is entitled to recover one undivided moiety of the premises in dispute, and that the judgment must, consequently, be reversed.

*For affirmance*—Judge HAINES.

*For reversal*—THE CHANCELLOR, Judges OGDEN, ELMER, POTTS, RYERSON, VREDENBURGH, ARROWSMITH, CORNELISON, SWAIM, VALENTINE and WOOD.

CITED *in Ross* v. *Adams,* 4 *Dutch.* 163; *Dodge* v. *Aycrigg,* 1 *Beas.* 83; *Armstrong* v. *Ross,* 5 *C. E. Gr.* 119; *Vreeland* v. *Blauvelt,* 8 *C. E. Gr.* 485; *Phelps* v. *Morrison,* 9 *C. E. Gr.* 199.