210 N.J. Super. 127 (1986)
509 A.2d 252
BOROUGH OF WILDWOOD CREST, A MUNICIPAL CORPORATION, PLAINTIFF-APPELLANT,
v.
CECILE O. SMITH, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 20, 1986.
Decided May 9, 1986.
*129 Before Judges KING, O'BRIEN and SIMPSON.
Matthew M. Millichap argued the cause for appellant (Cerreto & La Penna, attorneys; Matthew M. Millichap, on the brief).
*130 Robert L. Taylor argued the cause for respondents (Visalli & Karavan, attorneys; Joseph C. Visalli and Robert L. Taylor, on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
Borough of Wildwood Crest (Borough) appeals from a judgment of the Law Division which determined the quantum of real property owned by defendants Monterey Motel, Inc. (Monterey) and Cecile O. Smith (Smith), for purpose of valuation in this condemnation action.[1]
Both of the properties are beaches fronting on the Atlantic Ocean. The Borough contends that the properties of Smith and Monterey extend only from the established bulkhead to the mean high water line and are both subject to an easement for free and open public bathing beach purposes. Both property owners successfully argued that they had riparian rights in the land extending eastward from the mean high water line at the time of their deed, approximately 4,000 feet into the Atlantic Ocean. Smith successfully argued that the easement to the Borough for public bathing beach purposes, purportedly reserved in the deed to her predecessor in title, was invalid as being given to a third party and prospective, i.e., not a present grant of such an easement.
After a bench trial including testimony of title experts and receipt of various deeds in the chains of title, riparian grants, and various maps, the trial judge rendered a letter opinion. The implementing order entered on December 14, 1984, which appointed condemnation commissioners, provided that the properties *131 of Monterey and Smith extend beyond the premises described in the schedules attached to the condemnation complaint "to the exterior line of the riparian grant by the State of New Jersey Board of Commerce and Navigation, to Wildwood Crest Realty, dated June 15, 1925." The order further provided that an easement in favor of the Borough for public beach purposes covering both properties was effective as to the Monterey property, but ineffective as to the Smith property. The Borough appeals. We affirm in part and reverse in part.
The property in dispute is included within premises which have been referred to by the parties and the trial judge as Tract 5, which is described as follows:
ALL THAT parcel of land flowed by tide water, BEGINNING in high water line of Atlantic Ocean at intersection of Southwest side of Rambler Road extended Southeast to said high water line; thence (1) South 43 degrees 33 minutes East 3,535.63 feet more or less to exterior line established by Board of Commerce and Navigation; thence (2) South 36 degrees 5 minutes West, 4,567.27 feet along said exterior line to division line established by Agreement between Cape May Real Estate Company and Wildwood Crest Realty Company; thence (3) North 46 degrees 30 minutes West 3,608.8 feet more or less, to a point in approximate high water line as of September 1924; thence (4) North 37 degrees 20 minutes East 4,851.44 feet, more or less, along approximate high water line of September 1924, to place of beginning.
This parcel is labeled as Tract 5 and described as above in a deed dated April 8, 1958 from Norman S. Taylor, Sheriff of the County of Cape May, to Stephen E. McLoughlin, Jr., Trustee (McLoughlin) as a result of a mortgage foreclosure judgment dated January 14, 1958, bearing docket # F2903-56.
Both the Borough and defendants Monterey and Smith trace their chain of title to Wildwood Crest Realty Company/Wildwood Strand Realty Company. Wildwood Strand Realty Company gave a mortgage covering certain premises, including Tract 5, to Robert and David Hammond, dated July 15, 1925, and recorded in Book 225 of Mortgages at page 347 &c. This mortgage was assigned by Robert Hammond and the Estate of David Hammond to Colonial Trust Company, by assignment dated October 25, 1927, and recorded in Book 32 of Assignment of Mortgages at page 240. Colonial Trust Company merged *132 and consolidated with "Pennsylvania Company for Insurance on Lives and Granting Annuities," which subsequently changed its name to "Pennsylvania Company for Banking and Trusts." By assignment dated September 2, 1952, and recorded in Book 55 of Assignment of Mortgages at page 220, Pennsylvania Company for Banking and Trusts assigned the mortgage to McLoughlin. This is the mortgage which McLoughlin foreclosed in 1958 which resulted in the Sheriff's deed conveying Tract 5 to McLoughlin.
As of July 30, 1952, the Borough was the owner of 24 tax sale certificates, which included certificates numbered 1432 covering Block 118A, and 1436 covering Block 126A, in front of which lie the premises, owned by Smith and Monterey, described in the schedules attached to the condemnation complaint. In 1952, the Borough filed an action in the Chancery Division, bearing docket # F1952-51, to foreclose the right of redemption in these tax sale certificates against Wildwood Gables Corporation, the Pennsylvania Company for Banking and Trusts, the Township of Lower and the State, in which default was entered against the defendants. The court fixed September 2, 1952 as the time and place for redemption of the lands in question. At that time and place, McLoughlin, as assignee of a mortgage upon the lands covered by 21 of the tax sale certificates, appeared and paid a sum of money to redeem the 21 tax sale certificates pursuant to N.J.S.A. 54:5-54, including # 1432 and 1436 covering Blocks 118A and 126A which were then assigned to McLoughlin. On the application of McLoughlin, he was substituted as plaintiff in the action to foreclose the right of redemption in these tax sale certificates assigned to him by the Borough.
Thereafter, on October 20, 1952, the right of redemption of the named defendants was foreclosed and title in fee simple in the premises in question was vested in McLoughlin. This included Block 118A and Block 126A. A certified copy of the *133 judgment of foreclosure was recorded on October 23, 1952 in Deed Book 786 at page 116.
Contrary to the finding by the trial judge, the mortgage held by McLoughlin, which included Tract 5, was not foreclosed by the proceedings resulting in the judgment of October 20, 1952. That judgment was solely a foreclosure of the owner's right of redemption in premises covered by tax sale certificates pursuant to N.J.S.A. 54:5-85 et seq. Included within that section is N.J.S.A. 54:5-104 which provides as follows:
When in a judgment in an action to foreclose the right of redemption, the lands are described in a manner other than that contained in the certificate of tax sale, the judgment shall bar the defendant's right of redemption in and to all the lands described in the judgment, and that property only.
The judgment in this case described the property both by block number, including Blocks # 126A and # 118A, as well as by metes and bounds, the first and second course of which extend to and along the high water line and include the beach properties being condemned by the Borough. The judgment in that cause bars redemption only in the lands described in the complaint. See Newark v. Lodato, 139 N.J. Eq. 471, 472 (Chan. 1947). Proceedings to foreclose a tax sale certificate are not followed by a public sale, nor by a deed from a sheriff or other public official as in a mortgage foreclosure. The final judgment bars rights of redemption, but does not otherwise enlarge the right, title and interest of the certificate holder. His certificate does not become merged into the judgment; it subsists as the indicia of title. Merger, in any event, is a matter of intention and not favored in equity. See Kurzius v. The Hillside Land Co., 112 N.J. Eq. 466, 468 (Ch. 1933); see also 13 N.J.Prac. (Liebman Abstracts and Titles) (3rd Ed. 1966), § 944, p. 568; see also Bron v. Weintraub, 42 N.J. 87, 91-92 (1964).
Tract 5 was not included in either of the blocks identified in the tax sale certificates nor in the metes and bounds description in the judgment. Title to Tract 5 remained in Wildwood Crest Realty Company or Wildwood Strand Realty Company/Wildwood Gables Corporation, to whom it had been conveyed by a *134 riparian grant from the State,[2] subject to the mortgage held by McLoughlin, as mortgagee by assignment from Pennsylvania Company for Banking and Trusts. Thus, while it is true that the mortgage apparently encumbered Tract 5, the mortgage was not foreclosed as part of the foreclosure of the right of redemption in the tax sale certificates, as held by the trial judge. We therefore disagree with the statement by the trial judge in his written opinion:
The mortgagee in 1952 obviously intended to foreclose all of the mortgagor's rights in said property including the mortgagor's riparian rights.
The mortgage was not foreclosed by McLoughlin, until the judgment of the Chancery Division dated January 14, 1958, bearing docket # F2903-56, which resulted in the sheriff's deed from Norman S. Taylor, Sheriff of the County of Cape May, to McLoughlin, dated April 8, 1958, and recorded in Book 968 of Deeds at page 166, which, as noted, included Tract 5.
In the meantime, McLoughlin had conveyed to Bayview Corporation (Bayview) premises including Blocks 118A and 126A, by warranty deed dated May 1, 1954, and recorded in Book 825 of Deeds at page 207. This deed contains a recital that these were the premises acquired by McLoughlin through the tax sale foreclosure judgment recorded in Deed Book 786 at page 116 &c. By warranty deed dated May 1, 1954 and recorded in Book 825 of Deeds at page 199, Bayview conveyed Block 126A, also described by metes and bounds, to E.H. Zimmer, which deed contains a recital:
TOGETHER with the Riparian Rights of the party of the first part but under and subject to an easement to be given by the party of the first part to the Borough of Wildwood Crest for the area from the mean high water line to 150 feet westerly thereof, the purpose of said easement being to reserve said area as a public bathing beach.
*135 Eric H. Zimmer and Florence Zimmer conveyed part of these premises to defendant Cecile O. Smith, by warranty deed dated October 2, 1965, and recorded in Book 1138 of Deeds at page 68 &c. as Tract 2, which contains a recital following the metes and bounds description of Tract 2:
TOGETHER WITH any and all riparian rights of the grantor, if any there be. No warranties, express or implied, of riparian rights are given hereby, it being the intent only to transfer, assign and convey to the grantees herein such riparian rights, if any, as the grantor may have.
Between the descriptions of Tract 1 and Tract 2 in this deed, there is a recital:
Subject to an easement to the Borough of Wildwood Crest for the area from the mean high water line to 150 feet Westerly thereof, the purpose of said easement being to reserve said area as a public bathing beach, as contained in deed from E.H. Zimmer, dated May 1, 1954 and recorded in Deed Book 825, page 199, to Borough of Wildwood Crest.[3]
Defendant Smith bases her claim to title on the foregoing conveyances, none of which include any part of Tract 5 except by accretion.
Defendant Monterey acquired title to its property by warranty deed dated June 3, 1977, from John and Josephine Corrino, which is recorded in Book 1381 of Deeds at page 247 &c. The premises being condemned are described in that deed as Tract # 2. The deed also contains the following recitals:
TOGETHER WITH any and all riparian rights accruing thereto or to be hereafter acquired by the grantor herein or its successors or assigns.
UNDER AND SUBJECT to an easement deed made and given by Bayview Corporation a corporation of New Jersey, dated June 26, 1954 and recorded November 17, 1954 in the Office of the County Clerk of Cape May County in Deed Book 841 at page 437, to the Borough of Wildwood Crest, New Jersey, granting to said Borough of Wildwood Crest a perpetual easement for free and *136 public bathing purposes with a privilege of public ingress and egress thereto and therefrom, reference to said deed being had will cause its terms more fully and at large to appear.
The Corrinos acquired title to the premises by warranty deed from Del Conte Enterprises, dated January 16, 1976, and recorded in Deed Book 1354 at page 443 &c., in which the premises are also described as Tract 2 and which contains the same two quoted recitals as in the deed from Corrino to defendant Monterey. Del Conte Enterprises acquired title to the premises from the Executors of the Estate of Marion Acton, Deceased, by deed dated November 20, 1975, and recorded in Book 1352 of Deeds at page 652 &c., in which the premises are described as Tract 2, and which also contains the same two quoted recitals.
Jonathan W. Acton and Marion Acton had acquired title to Tract 2 from Bay View Corporation by deed dated May 28, 1956, and recorded in Book 902 of Deeds at page 488 &c., which also contained the same two recitals as to riparian rights and subject to the easement to the Borough.
Thus, both Smith and Monterey trace their title to Bayview, which in turn acquired title from McLoughlin. None of these deeds include Tract 5. However, Smith and Monterey contend that, by virtue of the doctrine of after-acquired title or estoppel by deed, when McLoughlin foreclosed the mortgage in 1958 and acquired title to Tract 5 from Sheriff Taylor, Tract 5 went from McLoughlin to Bayview Corporation, and through the various described warranty deeds to Smith and Monterey. We agree.
As noted, Tract 5 was included within a riparian grant from the State of New Jersey to predecessors in title to Smith and Monterey. The premises acquired by Smith and Monterey border on the Atlantic Ocean and they became entitled to accretions to their properties. As upland owners, they had a right to the alluvion independent of the riparian grant from the *137 State, notwithstanding the enactment of N.J.S.A. 54:5-104. There has been a fairly substantial accretion, so that a portion of the premises contained within the riparian grant is now dry land, to which defendants Smith and Monterey would be entitled as accretions to lands owned by them as upland owners. See Beach Realty Co. v. Wildwood, 105 N.J.L. 317, 322 (E. & A. 1928). For a discussion of this subject, see Borough of Wildwood Crest v. Masciarella, 51 N.J. 352 (1968) (involving land in the same area).
We are uncertain as to the exact amount of land which has become dry land, but undoubtedly some portion of the riparian grant as described in Tract 5 is still under water. Thus, there remains the question of the right of Smith and Monterey to the land still under water. As to Monterey, there is a recital in the Monterey chain of title, "together with any and all Riparian Rights accruing thereto or to be hereafter acquired by the grantor herein or its successors or assigns." [Emphasis supplied.] Thus, it is clear when McLoughlin obtained title to Tract 5 by virtue of the 1958 mortgage foreclosure, these were riparian rights acquired by him, and thus passed through the subsequent owners to Monterey, by virtue of the recitals in the deeds as well as the doctrine of after acquired title or estoppel by deed. It is not quite as clear in the Smith chain where, although the recital in the deed from Zimmer to Smith includes riparian rights, there is a specific disclaimer with respect to the riparian rights, which reads:
No warranties, express or implied, of riparian rights are given hereby, it being the intent only to transfer, assign and convey to the grantees herein, such riparian rights, if any, as the grantor may have.
This would leave Smith's title in question as to the portion of Tract 5 still under water. However, because the Borough also traces its title through the doctrine of after-acquired property or estoppel by deed, which we are satisfied it did not get, we affirm the trial judge's conclusion of title in Smith as well as Monterey.
*138 As noted, the Borough also traces its claim of title to Tract 5 to Bayview. By bargain and sale deed, dated December 4, 1956 and recorded in Book 922 of Deeds at page 56 &c., Bay View Corporation conveyed Tract 5[4] to Robert J. Hendrickson (Hendrickson), as Trustee for the Borough of Wildwood Crest, which contains the following recitals:
This conveyance is intended as a gift to the aforesaid Robert J. Hendrickson, in trust nevertheless, for the Borough of Wildwood Crest and is intended to convey all of the right, title, and interest presently owned by Bay View Corporation in the described premises.
The right, title and interest conveyed hereby was acquired by Bay View Corporation from Stephen T. McLaughlin, Jr., Trustee, and Janet S. McLaughlin, his wife, by deed dated May 1, 1954, to Bayview Corporation and recorded May 4, 1954, in the Cape May County Clerk's Office in Deed Book 825, page 207. The said Stephen T. McLaughlin, Jr., acquired by an Assignment dated September 2, 1952 and recorded in the Cape May County Clerk's Office on September 2, 1952 in Assignment Book 55, page 220, and after interim assignments a certain Indenture of Mortgage made by the Wildwood Strand Realty Company to Robert Hammond and David Hammond, dated July 15, 1925 and recorded in the Cape May County Clerk's Office on July 28, 1925 in Book 225, page 347, which mortgage covered, inter alia, the premises herein described; and in the aforementioned Deed of Conveyance to Bayview Corporation, conveyed together with his wife, the said Janet S. McLaughlin, all of their right, title and interest under such mortgage.
Bayview Corporation in addition to the conveyance herein, covenants that upon the foreclosure of the above mortgage and upon the conveyance of the described to Bayview Corporation, its successors or assigns from the aforesaid Stephen T. McLaughlin, Jr., Trustee, and Janet S. McLaughlin, his wife, it will confirm this conveyance by the execution and delivery of a Confirming Deed to the aforesaid Trustee, Robert J. Hendrickson, grantee herein.
The said trustee upon receipt of the deed or deeds of confirmation shall forthwith convey the within described premises to the Borough of Wildwood Crest, in fee; and his trust shall then cease and determine. This conveyance in trust being a conveyance of future interest shall be irrevocable.
It was not until a deed dated November 10, 1982, the recording of which does not appear in the appellate record, that Hendrickson conveyed the premises in question to the Borough by a "plain language" deed, which appears to be a bargain and sale *139 or quitclaim deed.[5] The recital in that deed reads as follows:
Being the same land and premises which Bayview Corporation, a corporation of the State of New Jersey by Deed dated December 4, 1956 and recorded December 20, 1956 in the office of the Clerk of Cape May County in Deed Book 922 page 56 granted and conveyed unto Robert J. Hendrickson, the grantor in fee.
By virtue of this recital, we conclude that Bayview Corporation did not execute and deliver a confirmatory deed subsequent to the 1958 mortgage foreclosure by McLoughlin in which he acquired title to Tract 5, as it was recited would be done in the deed from Bayview to Hendrickson, dated December 4, 1956.
A conveyance to the grantor of lands subsequent to his deed to another with warranty enures to the benefit of his grantee. See Gough v. Bell, 21 N.J.L. 156; see also Armour Realty Co. v. Carboy, 124 N.J.L. 205, 207 (S.Ct. 1940). In Moore v. Rake, 26 N.J.L. 574, 583 (E. & A. 1857), the court stated:
[I]t is a general principle, deducible from all the authorities, that an instrument which legally creates an estoppel to a party undertaking to convey real estate, he [grantor] having nothing in the estate at the time of the conveyance, but acquiring a title afterwards by descent or purchase, does in fact pass an interest and title from the moment such estate comes to the grantor.
See also Beach Realty Co. v. Wildwood, supra, 105 N.J.L. at 322.
"Under the well-settled doctrine of estoppel by deed, a grantor who executes a general warranty deed purporting to convey land to which he has no title will not be heard to claim title against his grantee, if he (the grantor) subsequently acquires title." Palamarg Realty Company v. Rehac, 80 N.J. 446, 458-459 (1979). Although a subsequent purchaser for value without notice may rely upon the title record and hence be freed of an estoppel not evident from a title search, see Wack v. Collingswood Extension Realty Co., 114 N.J. Eq. 253 (E. & A. 1933), cited in Robinson-Shore Development Co. v. Gallagher, *140 26 N.J. 59, 78 (1978), (Weintraub, C.J. concurring), here, the deed to Hendrickson, even though it was recorded, was executed before Bayview had obtained title to the land conveyed and after the warranty deeds to Smith and Monterey's predecessors in title. The deed to Hendrickson was by bargain and sale so that when McLoughlin did obtain title to Tract 5 by the mortgage foreclosure in 1958, title passed to his subsequent grantees, i.e., Monterey and Smith, (even though the deed to Smith did not warrant the riparian rights as did the deed to Monterey's predecessors in title).
A bargain and sale deed is a deed of conveyance without any covenants. It is a bare conveyance to the grantee of whatever interest the grantor has at the time of the conveyance. See 13 N.J. Practice, Lieberman Abstracts and Titles § 314 p. 225, but see Suburban Golf Club v. State Highway Com'r, 92 N.J. Super. 125, 137 (Law Div. 1966). A quitclaim passes the same estate to a grantee as does a deed of bargain and sale. See N.J.S.A. 46:5-3; see also Palamarg Realty Company v. Rehac, 80 N.J. at 452. Although the deed from McLoughlin to Bayview was a warranty deed so that acquisition of Tract 5 by McLoughlin through the mortgage foreclosure in 1958 brought title to Bayview by the doctrine of after-acquired property or estoppel by deed, the deed from Bayview to Hendrickson was a bargain and sale deed, which did not vest title in the Borough through the deed from Henderson to the Borough. Furthermore, the deed from Bayview to Henderson preceded acquisition of title by McLoughlin and was not followed by any confirmatory deed. Meanwhile, Bayview had made conveyances by warranty deed to the predecessors in title of both Smith and Monterey.
To summarize, we conclude that McLoughlin did not acquire title to Tract 5 at the time of the tax foreclosure in 1952. When he did acquire title to Tract 5 by the mortgage foreclosure in 1958, title to that parcel came to Monterey and Smith by virtue of the doctrine of after-acquired property or estoppel by deed. *141 The specific conveyance of Tract 5 by bargain and sale deed from Bayview to Hendrickson, not followed by a deed of confirmation after McLoughlin acquired title to Tract 5 by the mortgage foreclosure in 1958, and after the conveyance by warranty deed to the predecessor in title of Smith and Monterey, did not convey title to Tract 5 to the Borough by the deed from Hendrickson to the Borough in 1982. Accordingly, we affirm the judgment of the trial court finding title to Tract 5, which adjoins their beach property, in Monterey and Smith.
We next turn to the conclusions of the trial judge with respect to the easement given by Bayview to the Borough, by deed dated June 26, 1954 and recorded in Book 841 of Deeds at page 437 &c., encumbering both the Smith and Monterey properties. Since the deed from Bayview to Monterey's predecessor in title was after the easement was given, the trial judge concluded the Monterey property was subject to the easement. We agree. Furthermore, no appeal has been taken from that determination.
Conversely, the trial judge concluded that the reservation of an easement in the deed from Bayview to Zimmer was ineffective to encumber the Zimmer property. He said:
This court determines that the Zimmer deed could not be encumbered by an easement that would be `subsequently' defined. In order for the Zimmer property, Block 126A, to be encumbered, the conveyance describing the extent of said easement would have to be delivered simultaneously with, or prior to the delivery of the grant to Zimmer. To rule otherwise would be to invite mischief and uncertainty into the fine art of conveyancing. There can be no creation of an easement in vacuo .... The process which creates an easement necessarily fixes its extent. RESTATEMENT OF THE LAW OF PROPERTY, § 482 (1944), Torrey v. Thayer, 37 N.J.L. 339, 344 (S.Ct. 1874).
We disagree. Initially, we observe that the recital in the deed did define the extent and purpose of the easement, as follows:
... Under and subject to an easement to be given by the party of the first part to the Borough of Wildwood Crest for the area from the mean high water line to 150 feet westerly thereof, the purpose of said easement being to reserve said area as a public bathing beach.
Clearly, the extent of the easement was from the mean high water line to 150 feet westerly thereof and the purpose is *142 clearly stated. It is true that the recital contemplated that the easement would be given to a third party (the Borough) in the future and not simultaneously with the deed to Zimmer.
We do not understand the relevance of the authorities relied upon by the trial judge for his conclusion. As noted, the easement was not created in vacuo, i.e., without object, concomitants or coherence. See Black's Law Dictionary, (4th ed. 1968). Torrey v. Thayer, 37 N.J.L. 339 (Sup.Ct. 1874), was simply critical of the language of an exception in a deed. We agree that the extent of an easement created by a conveyance is fixed by the conveyance as stated in Restatement of Property, § 482 at 3009 (1944), cited by the trial judge.
The topic has been discussed in 3 Powell on Real Property, § 407 at 34-37, 34-38, where the author states:
Words of promise have been held in a few cases to lack the ingredient of a present grant and hence to fail to create an easement.[*] The better rule, that `an easement may be created by words sounding in covenant,' is widely accepted.[*] [[*] Footnotes omitted.]
We conclude that the words in the deed from Bayview to Zimmer sound in covenant and Zimmer took the conveyance "under and subject to an easement to be given." The easement was thereafter given by Bayview and recogized by Zimmer. Zimmer's conveyance to Smith is made subject to it. Both the intention to give the easement and the easement were matters of record of which Smith had notice. See N.J.S.A. 46:21-1.
Although the trial judge did not base his ruling on the fact that the easement reserved was in favor of a third person rather than the grantor, Smith argues that, in the conveyance of land between two parties, a reservation can only be made in favor of the grantor, and one made in favor of a third person is void. He cites as authority 13 N.J. Practice, Liberman Abstracts and Titles (3rd ed. 1966), § 379, at 277.[6] It was the *143 common-law rule that an easement in favor of a third person could not be created by reservation or exception. See 3 Powell on Real Property, § 407 at 34-44. Many jurisdictions still follow this rule. The theory, of course, is that the stranger has no interest in the land conveyed out of which he might reserve an easement. Legal writers, however, are critical of the rule, and the Restatement refuses to adopt it. See Restatement of Property, § 472 at 2967 (1944). A minority of jurisdictions, probably representing a trend, do allow easements to be created in favor of third persons by language of reservation. They reason either that the intent of the parties to the deed should be followed, disregarding language technicalities, or that the reservation operates as a grant from the grantee of the deed. See Cunningham, The Law of Property, § 8.3 at 443-444 (1984).
The cases on this subject have been collected in an annotation. See 88 A.L.R.2d 1199 (1963). The annotation, however, cites no New Jersey cases, nor has our research discovered any which have adopted the common-law rule. As noted, the Restatement of Property, supra, also rejects the common law rule. Rather, it states: "By a single instrument of conveyance, there may be created an estate in land in one person and an easement in another." Id. at 2966. As comment b. explains:
... it is possible to convey an estate in fee to one conveyee and at the same time and by the same instrument of conveyance convey an easement in the same land to another conveyee. This result is not prevented by the fact that the conveyance of the easement is, in terms, a reservation to the person to whom it is conveyed.
In 88 A.L.R.2d, supra, at 1212, the author states the proposition of many cases is that a "reservation" in favor of a stranger to the deed will in some instances be construed, and be deemed to operate, as an exception where it sufficiently appears that such was the intent of the instrument. Or, it may be construed *144 that the grantor retains title to the reserved part which he can then dispose of. Although we recognize that most jurisdictions still follow the common-law rule, under the circumstances present in this case, we believe the approach of the Restatement to be better and thus adopt it.
Applying these principles to the facts in this case, we observe that when Bayview conveyed the land to Zimmer it specifically made the conveyance subject to the easement to be given to the Borough. When Zimmer conveyed these premises to Smith, the deed contains the following language:
Subject to an easement to the Borough of Wildwood Crest for the area from the mean high water line to 150 feet westerly thereof, the purpose of said easement being to reserve said area as a public bathing beach, as contained in deed from E.H. Zimmer dated May 1, 1954 and recorded in Deed Book 825 page 199 to Borough of Wildwood Crest. [Emphasis supplied.]
It is therefore evident that Zimmer, the grantee from Bayview, accepted the conveyance expressly subject to, and with knowledge of, the easement to be given to the Borough. Thereafter, when Zimmer conveyed the property to Smith in 1965, subsequent to the deed of easement from Bayview to the Borough, Zimmer, by the recital in the deed to Smith, stated that Zimmer had conveyed the easement to the Borough in the same instrument by which he obtained title. This view is consistent with the reasoning of the Restatement, whereby one instrument can both convey the premises to one party and convey an easement in the same land to another. For an analogous situation, see Niestat v. Equitable Security Co., 6 N.J. Super. 148 (App.Div. 1950), where a reservation of a right of way was construed as a covenant for the benefit of a third party, which the court concluded was enforceable notwithstanding that the third party was a future grantee.
We recognize, of course, that had Bayview never executed a deed of easement to the Borough, a question would arise as to whether or not the easement to the Borough became effective through the deed from Bayview to Zimmer (as Zimmer apparently recognized). This may have been what led the trial judge to say, "To rule otherwise would be to invite mischief and *145 uncertainty into the fine art of conveyancing." However that did not occur in this case, since the deed of easement was given by Bayview to the Borough and was recognized by Zimmer as an easement on his land in his deed to Smith.
Under all of the circumstances, we are satisfied that the Smith property is subject to an easement in favor of the Borough, of which Smith had notice. However, that easement was for an area from the mean high water line in 1954 to 150 feet westerly thereof, rather than the 200 feet contained in the deed of easement from Bayview to the Borough. Therefore, the Smith property is encumbered by an easement of 150 feet rather than 200 feet as stated in the easement.
We further note that the deed of easement contains the following provision:
... it being further understood and covenanted that in the event of there being in the future an ingress of uplands or riparian accretion, that the said easement may and shall be from time to time reestablished to conform with a new Mean High Water line to a point extending Two Hundred (200) feet Northwesterly therefrom and that any accretions of upland then extending Westerly beyond Two Hundred (200) feet from the New High Water line as then established shall revert to and become the sole property of the party of the first part, its Successors and Assigns. It being the intent of the herein described easement to extend for a width of Two Hundred (200) feet landward from the High Water Line of the Atlantic Ocean wherever said High Water line may be located, as affected and determined by any riparian accretion or erosion of the shoreline caused by the natural action of the waters of the said Atlantic Ocean.[7]
Since there have been accretions and some of the riparian grant lands are now dry land, and the mean high water line has moved easterly, both Smith and Monterey are entitled to the value of some land previously encumbered by the easement which is no longer so encumbered because of the foregoing language. Further, the deed of easement contains a reverter clause if the premises are not used as a "free, open and public" bathing beach.
*146 For the reasons herein stated, the matter is remanded to the trial judge for the entry of judgment consistent with this opinion.
NOTES
[1] Monterey had commenced an inverse condemnation action against the Borough, which was consolidated with the condemnation action instituted by the Borough against Smith and Monterey. The condemnation action also includes Sadye Silver as the owner of premises described in Schedule B attached to the condemnation complaint. However, Silver did not join in the motion which resulted in the order for judgment under review.
[2] The correct name of the entity originally having title is not clear from the record. The riparian grant dated January 17, 1907 and recorded January 31, 1907, in Book 216 of Deeds at page 459 &c., was to Cape May Real Estate Company. The riparian grant dated June 15, 1925 and recorded July 21, 1925, in Book 406 of Deeds at page 333 &c. is to Wildwood Crest Realty Company.
[3] There is also a recital in this deed that Tract 2 is "inter alia the same lands and premises granted and conveyed unto the said Eric H. Zimmer and Florence Zimmer, his wife, by Atlantis Lodge, Inc. by the above two recited deeds," which are identified in a recital following the description of Tract 1. These are a deed dated December 31, 1963, and recorded in Deed Book 1099 at page 235, and another deed dated April 24, 1964, and recorded in Deed Book 1114 at page 249. Neither of these deeds were received into evidence as part of the chain of title.
[4] The description is somewhat different than the description of Tract 5 contained in the mortgage foreclosure deed from Sheriff Taylor.
[5] The deed contains consideration in the amount of $1,300 which Hendrickson said was his fee for acting as trustee during the course of his testimony as an expert on behalf of the Borough.
[6] The author cites C.J.S. and Broadway-Long Beach Realty Corporation v. Feiber, 141 Misc. 764, 252 N.Y.S. 612 (Sup.Ct. 1931), but also cites Niestat v. Equitable Security Co., 6 N.J. Super. 148, 152 (App.Div. 1950), where we held that a covenant for the benefit of a third party, may be enforced notwithstanding that the third party was a future grantee.
[7] In his opinion, the trial judge states, "By amendment the parties made clear that although the 200 foot easement could shift oceanwards, it could not by erosion move landward."