## GABRIEL DuVAL *vs.* EDWIN M. WILMER ET AL.

*Notice from Possession of Land—Cloud on Title—Convey-
ance of Equitable Interest in Land—Statute of Frauds.*

A party in possession of land and holding the legal and equi-
table title thereto is entitled to a decree annulling a void deed
purporting to convey an interest in the land, because the same
is a cloud on his title and a hindrance in disposing of the
property.

Possession of land is notice of the rights of the party in pos-
session which could be ascertained upon inquiry.

A parol agreement for the sale of an equitable unrecorded in-
terest in land to the party in possession who has the legal
title, when the purchase money has been paid, is enforceable
against the vendor and those claiming under him with notice.

Plaintiff being in possession of certain land and holding the en-
tire legal title thereto bought out an equitable and unre-
corded interest therein owned by another person. Subse-
quently this person conveyed the same equitable interest to
the defendant by a deed which was recorded, together with
the contract creating the equitable interest. *Held,* that plain-
tiff's possession was notice to the defendant of plaintiff's
rights; that defendant acquired no interest under the con-
veyance to him, and that this conveyance should be vacated
and annulled.

Appeal from a decree of the Circuit Court of Balti-
more City (DENNIS, J.) dismissing the bill of complaint.

The cause was argued before McSHERRY, C. J.,
BRYAN, FOWLER, BRISCOE and PAGE, JJ.

*Henry C. Kennard* for the appellant.

The paper of February 1, 1887, was in fact nothing
more, and intended to be nothing more than an ac-
knowledgment, that the appellee Hanes *had been* fully

compensated for any interest he may have had in the
original agreement, and that on that day, February 1,
1887, the parties to the original agreement had come
together, and upon an ascertainment, adjustment or
settlement of pre-existing or contemporaneous transac-
tions, had reduced it to writing.   Practically, no matter
what its form, it is a receipt to the appellant, and cer-
tainly payment of money as well as when it was paid,
may be proved orally though a receipt was taken.   1
*Green. on Ev.*, sec. 90.   The testimony is uncontradicted,
if admissible, that, at the date of the so-called assign-
ment of Hanes to Wilmer, Hanes had nothing to assign,
and, therefore, Wilmer took nothing and the only result
of that paper, was to create a cloud upon the appellant's
title which he is entitled to have removed.   *Shepherd* v.
*Bevin,* 9 Gill 35; *Wolfe* v. *Hauver,* 1 Gill 89; *Stewart* v.
*State,* 2 H. & G. 118; *Cramer* v. *Shriner,* 18 Md. 144.
Indeed it is a well established principle of equity, that in
order to get at the intention of the parties, parol evi-
dence is admissible for the purpose of proving that even
so solemn an instrument as a deed is not in fact a deed
but only a mortgage.   *Dougherty* v. *McColgan,* 6 G. & J.
275; *Hinkley* v. *Wheelright,* 29 Md. 348; *Baugher* v.
*Merryman,* 32 Md. 191; *Brown* v. *Reilly,* 72 Md. 489.
Moreover, the object of the proof in this case was to
show that the agreement of October 17, 1885, had been
abandoned or waived, and it is clear that, even in cases
where a writing is by statute made necessary to the valid-
ity of an agreement, no writing is necessary to show the
abandonment or waiver of such agreement, but it may
be *wholly* waived or abandoned by a subsequent oral
agreement, so as to prevent either party from recover-
ing on it.   2 *Taylor on Ev.*, sec. 1143.   This is clear as
between the appellant and Hanes, and must be equally
so between the appellant and Wilmer, who took with
full notice of appellant's possession and record title.
This, of course, would not apply so as to affect the rights
of a *bona fide* purchaser for value, without notice, but
Wilmer does not occupy that position.   His rights and
Hanes' are identical.

The contention of the appellant is that the original agreement was not one required to be in writing and *a fortiori*, not to be recorded. That Hanes' interest thereunder was not an equitable interest in land, not to be released or transferred save by a written acknowledgment and recorded paper. That the only paper to be written, acknowledged and recorded to carry out the purpose of the agreement was specifically named in it, and was so written, acknowledged and recorded. Hanes had his right to the named proportion of the sales, if sales were made, and if the adventure failed and no sales were made, he had a right to have back his money, which he did. And no writing or record of any sort was needed to enable him to enforce or release any rights he had under that agreement. Priority of record of a non-recordable paper can have no effect. *Wade on Notice*, secs. 98, 119. See also *Carroll's Lessee* v. *Norwood*, 1 H. & J. 179; *Coale* v. *Pennington*, 33 Md. 480. The relation between the appellant and the appellee Hanes, was in the nature of a resulting trust to the extent of the money advanced by Hanes and the proportion of profits to which he was to become entitled in the event of sale. *Hayes* v. *Hollis*, 8 Gill 357; *Green* v. *Drummond*, 31 Md. 71. Nothing is better established than that a resulting trust may be proved by parol. *Dorsey* v. *Clarke*, 4 H. & J. 551.

The appellant contends, further, that the appellee, knowing that the record title was in the appellant, and also that the appellant was in undisturbed possession of and exercising absolute rights of ownership over said property, was bound to inquire as to the appellant's rights and interest in said property and took his assignment subject to any rights or equities the appellant may have had therein. His knowledge of the existence of the duplicate original agreement between the appellant and Hanes and its contents, or the surrender thereof to him by the said Hanes in no wise affected the obligation of inquiry put upon him by the notice given by the appellant's record title and possession. He was still bound to inquire whether the apparent interest of said

Hanes in the proceeds of said property, evidenced by said duplicate agreement, still existed at the time of Hanes' assignment to him, and, if he chose to take said assignment without making such inquiry or *any* inquiry of the appellant, he cannot now be permitted to set up any claim as against the appellant. That would be to enable him not only to escape any injury which might result from his own undisputed and gross negligence, but actually to derive a benefit therefrom. His duty, then, to make inquiry seems doubly binding in this case, when it is evident that if he had, the appellant would have notified him that Hanes had no interest to assign, as he did, in fact, so notify his counsel immediately upon being told by him of the assignment. Yet it is clear from his whole testimony that he made no such inquiry.

The doctrine of Notice by Possession, accurately stated, is this: Courts will in general hold a person about to acquire an interest in any subject matter to have notice of those circumstances which, had he not neglected his duty, would have come to his knowledge; and, therefore, if such a person purchases property which is in the open and notorious possession of some person other than his vendor, and, through his ignorance or *negligence*, he should fail to ascertain the *rights, claims* and *interests* of such occupant, he would take the property subject to the claims or equities of the party so holding. For it is most natural to suppose that any one in dealing with property which is not in the possession of his vendor, would make *inquiry of the person so holding* as to his rights in or claims to such property, and, failing to make this inquiry, it is not unjust that he should be charged with notice of all those facts which such inquiry would have disclosed, and should, therefore, take the property subject to all those rights which the party in possession has in the land. *Hardy* v. *Summers*, 10 G. & J. 324; *Johnston* v. *Canby*, 29 Md. 214; *Rogers* v. *Scarff et al.*, 3 Gill 137; *Baynard* v. *Norris et al.*, 5 Gill 482; *Valentine* v. *Seiss*, 79 Md. 191; *Landes* v. *Brandt*, 10 How. 348, 375; *Simmons' Creek Coal Co.* v. *Doran*, 142 U. S. 443; *Kirby* v. *Tallmadge*, 160 U. S. 379;

*Bryan's Lessee* v. *Harvey*, 18 Md. 128-9; *Daily Record*, Sept. 18th to Sept. 24th, 1897, inclusive; *Border State Savings Institute* v. *Wilcox*, 63 Md. 531.

The Court below, however, did not decide any of these questions of laches and notice, but based its decision entirely upon the race of diligence. In other words, it has treated the appellee, Wilmer, as though he was a *bona fide* purchaser for value and without notice, and entitled to all the advantages given to such purchaser by our registration laws. This, it is respectfully contended, was error. The appellee, Wilmer, was in no sense a *bona fide* purchaser for value without notice, and is not entitled to any advantage by reason of priority of record, even if it be admitted that a duly executed, acknowledged and recorded paper was necessary to transfer Hanes' interest. The object of our registry laws is to prevent fraud and not aid it. *Alexander* v. *Ghiselin*, 5 Gill 138.

*S. S. Field* (with whom was *Harry C. Gaither* on the brief), for the appellee.

The assignment under seal of Feb. 1, 1887, with perfect clearness, free from ambiguity, says: " In a settlement *made this day* . . . DuVal has purchased from the undersigned J. B. L. Hanes, all his right and interest in said houses, and the said Hanes . . . hereby relinquishes and assigns to the said DuVal, all his right and interest, &c." And it seems to us too plain for argument that parol evidence is inadmissible to show that the purchase and assignment had really been made months before though not reduced to writing until Feb. 1, 1887. *Bladen* v. *Wells*, 30 Md. 577; 1 *Greenleaf on Ev.*, Sec. 275; 17 *Enc. of Law*, p. 420. But such evidence was inadmissible for another reason. Such an interest in land cannot be transferred either at law or in equity, by a simple parol understanding. *Polk* v. *Reynolds*, 31 Md. 106; *Clabaugh* v. *Byerly*, 7 Gill 354; *Albert* v. *Winn*, 5 Md. 66, 77; 1 *Greenleaf on Ev.*, Sec. 264; *McEwan* v. *Ortman*, 34 Mich. 325; 8 *Enc. of Law*, 697. And Wilmer being in privity with Hanes, by virtue of

the assignment of Nov. 12, 1886, has a right to set up
as he has done, the defence of the Statute of Frauds.
*Browne Stat. of Frauds*, Sec. 135 c.; *Best* v. *Davis*, 44 Ill.
App. 625.   Nor is there any element in this case to take
this alleged agreement between Hanes and DuVal, out
of the Statute.   There was no change of possession, at
the time of such alleged agreement, DuVal having been
in possession all the time from the date of the deed to
him, and agreement between him and Hanes, of Octo-
ber 17, 1885.

Merely continuing in possession is not part perform-
ance.   *Rosenthal* v. *Freeburger*, 26 Md. 75; 8 *Enc. of
Law*, p. 744; 2 *Minor's Inst.*, p. 773.   Neither is the
mere payment of the purchase money, part performance.
8 *Enc. of Law*, p. 742; 2 *Minor's Inst.*, p. 775.   In addi-
tion to all this it is conclusively shown that Hanes and
DuVal did not, in fact, have any parol agreement for
the transfer of Hanes' interest in the 17 houses to Du-
Val, until after the assignment of Nov. 12, 1886, from
Hanes' to Wilmer, for we find DuVal, *after* this date,
rendering to Hanes an account including these identical
17 Kensett Street Houses, and showing Hanes' indebted
to DuVal, on account of these houses, $500.91.

It is true Wilmer did not record his assignment, but
he took from Hanes his contract with DuVal, which had
never been recorded and which was the only evidence of
Hanes' interest; and, when DuVal came to take his as-
signment, if he had had it acknowledged and recorded,
he would have gained a priority over Wilmer.   He did
not take that precaution, but chose to rely on Hanes'
word, that the agreement showing Hanes' interest had
been lost or mislaid, when in fact it had been delivered
to Wilmer.   Wilmer secured the only evidence of
Hanes' interest; DuVal took no precaution, except
Hanes' word, and certainly has no equity to displace
Wilmer's prior assignment.

BRYAN, J., delivered the opinion of the Court.

The appellant filed a bill in equity, praying for a
decree to set aside a deed.   The appeal was taken from
the decree dismissing the bill with costs.

We will state the particulars of the controversy, and the facts upon which, in our opinion, its merits depend. On the seventeenth day of October, eighteen hundred and eighty-five, DuVal and Hanes executed an agreement in duplicate, under their respective hands and seals. The agreement was in the following words: "Memorandum of Agreement between Gabriel DuVal and J. B. L. Hanes. The said DuVal and Hanes have this day bought the leasehold interest in seventeen lots of ground on Kensett str., between Mary and Francis street, in Baltimore county, from Mrs. Elizabeth Fear, the title to said lots to be put in DuVal's name. The sum to be paid therefor is $3,400 cash. DuVal furnishes $500 and Hanes $500; and DuVal is to borrow $2,400, at 6 per cent., for which he is to be allowed by Hanes 1¼ per cent. com. on the loan. The lots and houses are bought to be sold for the joint benefit equally of DuVal and Hanes, and excepting the foregoing item, they are to equally share any and all losses, expenses and profits. DuVal is to do all necessary legal and conveyancing work, and Hanes all the work in his line as real estate agent in selling the houses, collecting the rents, &c., free of charge. As each lot is sold $150 is to be first appropriated out of the proceeds to the reduction of the $2,400 loan until the whole is paid. Signed in duplicate, this 17th of October, 1885."

The leasehold property was bought; DuVal contributed twenty-nine hundred dollars of the purchase money, and the legal title was conveyed to him; no mention being made in the deed of any interest in Hanes, or any other person whomsoever. The agreement shows on its face that the property was bought for the purpose of being sold for the benefit of DuVal and Hanes; and with the exception of the sum of twenty-four hundred dollars, they were to share equally "any and all losses, expenses and profits." DuVal took possession of the property immediately after the execution of the deed, and has ever since held uninterrupted and exclusive possession of it. None of the property has been sold. On the first day of February, eighteen hun-

dred and eighty-seven, DuVal and Hanes executed in duplicate under their hands and seals the following paper:

                         " Feby. 1, 1887.

" In a settlement made this day, between the undersigned, of the purchase of seventeen houses on Kensett str., purchased under an agreement between them, executed October 17, 1885, the undersigned Gabriel DuVal has purchased from the undersigned, J. B. L. Hanes, all his right and interest in said houses, and the said Hanes hereby acknowledges himself fully paid for the same, and hereby relinquishes and assigns to the said DuVal all his right and interest whatsoever under the said agreement of October 17th, 1885, to or in the said property, or to or in the income and profits derived from the same. Witness our hands and seals."

It is stated in the testimony of both DuVal and Hanes, that long previous to that date Hanes had ceased to have any interest in these houses. In answer to the thirteenth interrogatory DuVal says: " As a matter of fact, a settlement was had between us some months previous to this; Mr. Hanes, a short time after the purchase of the property by us, had drawn out his $500 interest in it, which I had paid him; I had asked him to return to me the duplicate of the agreement, which is plaintiff's Exhibit Examiner No. 3, which he had promised to do from time to time, but finally saying first, that he had failed to find it at his office or at his house, he then said he was satisfied it must be either accidentally destroyed or lost, and he then give me this paper last filed." In answer to the fourteenth interrogatory he says: " Mr. Hanes had ceased to have any interest in the property some months previous to the execution of this paper, perhaps seven or eight months, and this was only executed after he had given up the search for the original agreement." In answer to the fifteenth interrogatory he says that Hanes had no interest in the property in November, eighteen hundred and eighty-six. In answer to the sixteenth interrogatory he says: " I have a due bill from Mr. Hanes to me, dated December 21st, 1885,

DuVAL *vs.* WILMER.

for $300, which I loaned him by check, which I gave him, which due bill and cancelled check I file with the Examiner as plaintiff's Exhibit Examiner No. 9; at the time of lending him that money, I had previously paid him back the $500 which he had, or was supposed to have paid Mr. Fear, as his interest in the property, and this $300 loan to Mr. Hanes was over and above any balance of interest that he might still have at that time in the purchase, whether Mr. Hanes ever actually paid Mr. Fear his $500 I don't know; I assume that he did, and therefore paid it back to him when I bought his interest out." Hanes corroborates this testimony in his answers to interrogatories nineteen, twenty-nine, and cross interrogatories fifty-two, fifty-three and eighty-seven. He says emphatically that he had verbally settled with DuVal about a year before the written settlement was signed. In his answer to the eighty-seventh cross interrogatory, speaking of this paper, he says: "I had already readjusted all right and title to the property when we settled, simply verbally about a year before." An alleged copy of an account between DuVal and Hanes was offered in evidence by defendant. It is marked "Defendant's Exhibit Examiner, No. 4." It was evidently made out subsequently to the purchase of Hanes' interest by DuVal, although it is neither signed nor dated. An exception was filed to the admission of the account in evidence, and very clearly it was not competent in the absence of the usual effort to obtain the original. But assuming it to be properly in evidence, we may say that it is not inconsistent with the purchase, that the parties should subsequently make a statement of their dealings with each other, or that they should have other business together. On the twelfth day of November, eighteen hundred and eighty-six, Hanes conveyed by deed to Edwin M. Wilmer all his interest in the seventeen lots which had been purchased by DuVal for their joint benefit, and also another lot purchased by DuVal from Boston Fear and wife in which Hanes never had an interest. This deed was recorded July the twenty-eighth, eighteen hundred and

ninety, nearly four years after its execution.   The dupli-
cate of the agreement between DuVal and Hanes which
had been delivered to Hanes was recorded with the deed.
The testimony tends to show that this paper was deliv-
ered to Wilmer at the time of the execution of the deed.
Hanes in his testimony states that he was drunk when
this deed was executed, and that he recollects nothing
about it.   Other testimony, however, denies that he
was in any degree intoxicated.   It is conclusively shown
that DuVal had no knowledge of this deed until it was
recorded.

DuVal had the absolute legal estate in the seventeen
houses purchased in pursuance of the agreement with
Hanes; although Hanes had an equitable interest in the
property.   Long before the deed to Wilmer all of the
equitable interest had been purchased and paid for by
DuVal.   The purchase was made by parol, and the
execution of any paper writing was deferred in conse-
quence of the circumstance which we have stated.   We
do not suppose that any one doubts that a Court of
Equity will decree specific performance of a parol con-
tract relating to land when it has been fully performed
on one side.   In the present case DuVal was in undis-
turbed possession of the land by the consent of Hanes,
and he paid Hanes in full for his interest.   He had fully
performed everything to be done on his part, and noth-
ing remained to complete his title except the execution
of a conveyance by Hanes.   In *Alexander* v. *Ghiselin*,
5 Gill 181, the Court asks this question: " Who doubts
the authority of a Chancery Court to direct a convey-
ance, where the party in possession under a bond of con-
veyance has paid the purchase money? "   If the con-
tract of purchase could be enforced against Hanes, it is
enforceable against Wilmer, unless he has acquired by
his deed rights superior to those which belonged to his
grantor.   Let us consider this question.   In *Hardy* v.
*Summers*, 10 Gill and Johnson 316, it appeared that
Jonathan Hardy had died intestate leaving two daugh-
ters, his only heirs at law, and that they agreed by parol
to make partition of his lands.   The partition was ac-

cordingly made, and a bond was signed and sealed by the two heirs binding themselves to abide by the partition and they entered into possession accordingly. Afterwards Ann, one of the heirs, sold and conveyed to Thomas Talburtt all her interest in her father's real estate. Talburtt applied to the County Court for a commission to divide the lands of the deceased; they were divided by the commissioners, but not in the manner which had been agreed upon by the heirs, and the partition was ratified and confirmed by the Court, against the objection of Mary, the other heir, and her husband, James C. Summers. Summers and wife obtained an injunction from the Court of Chancery to restrain Ann and Talburtt from interfering with or entering upon the land held by them. This Court, considering on appeal the objections to the injunction, said: " The next reason for the reversal of the Chancellor's order is that the defendant, Talburtt," (the vendee) " is a *bona fide* purchaser without notice of the agreement entered into by Ann and her sister, or the proceedings under it, and as such must be protected in a Court of Equity against such agreement and proceedings. But this defence, if properly pleaded, could not avail the defendant, Talburtt. The actual possession of the complainants, according to the agreement and division under it, is a sufficient intimation of their rights to have put Talburtt upon inquiry into their nature, and, failing to make it, he is, in equity, visited with all the consequences of a knowledge of their title." In *Baynard* v. *Norris*, 5 Gill 482, the defendants set up in their answer the defence that they were *bona fide* purchasers without notice of the complainant's claim. This Court said: " The answer has altogether omitted to state one fact, which is essential to the validity of a plea, that the defendant is a *bona fide* purchaser, &c. Wherever the estate conveyed is one to which possession is incident, and is not a mere dry remainder or reversion, it is indispensably requisite to the validity of such a plea, that it should state that the grantor or mortgagor was, at the time of the conveyance, seized, or pretended to be seized,

and was possessed of the premises conveyed; as authorities for which, see *Equity Draftsman,* 449; 3 *Sugden Vendors,* 345-346; *Daniels* v. *Davidson,* 16 Ves. 249; *Boone* v. *Chiles,* 10 Peters 211." DuVal's possession was sufficient to put Wilmer on inquiry, and according to the well established rules, he will be presumed to have made inquiry, and he will be charged with every fact which inquiry would have given him. Being regarded as if he had full notice of DuVal's title, he must make his claim in subordination to it. And inasmuch as DuVal held the entire legal and equitable estate in the seventeen houses, there was no interest in them, on which the deed to Wilmer could take effect. With respect to the other house (the eighteenth) Hanes never at any time had any interest in it.

The evidence shows that the existence of Wilmer's deed has caused doubts about the validity of DuVal's title. On an occasion shortly before the filing of the bill when he had made an application for a loan on the security of the property, the loan was defeated because of an objection made to his title by counsel on account of Wilmer's deed. As DuVal has the entire title, legal and equitable, and is in quiet and undisturbed possession, he ought to be protected from all unneccessary annoyance and embarrassment in disposing of his property. The most complete and eligible mode to effect this result is to pass a decree declaring Wilmer's deed null and void, and setting it aside. Following the precedent set by this Court in *Polk* v. *Rose,* 25 Md. 153, we shall make such a decree.

> *Decree reversed with costs above and below, and decree annulling Wilmer's deed.*

(Decided June 28th, 1898.)