The bill prays that the defendant Aetna Casualty and Surety Company be enjoined from cancelling complainant's workmen's compensation policy for alleged non-payment of premium, until the amount of the premium legally payable be ascertained either in this suit or in some more appropriate proceeding.
Complainant is engaged in the business of grinding magnesium into powder, a process that involves great hazard of fire and explosion. Under our Employers' Liability Insurance law, R.S.34:15-70, c., every employer, including complainant, is required to make provision for the payment of obligations to injured employes or their dependents, either by carrying his own liability insurance after satisfying the Commissioner of Banking and Insurance of his financial ability (section 77), or by insuring in a company authorized to write workmen's compensation insurance in this state (section 78). An employer who fails to provide such protection for his employes is guilty of a misdemeanor (section 79). Complainant has not sufficient financial ability to carry its own insurance and so must obtain insurance from an insurance company. Complainant cannot continue in business if its policy, which has been issued by defendant company, be canceled unless it is able to procure other insurance. *Page 144 
In states like New Jersey, which require an employer to insure his workmen's compensation liability, employers who are unable to procure insurance in the ordinary manner by private arrangement with an insurer, present a problem which has been solved in a number of states, such as Ohio and New York, by the creation of a state insurance fund. In New Jersey, the insurance companies, in order to avoid the setting up of a competitive state fund, evolved a plan whereby they agreed that an employer unable to obtain insurance for himself, would be assigned to one of the insurance companies and that company would be obliged to underwrite the risk, and so no employer would be unable to procure insurance. The agency through which this plan operates is the Compensation Rating and Inspection Bureau of New Jersey.
The bureau was created by the legislature in 1917 and put under the supervision of the Commissioner of Banking and Insurance.R.S. 34:15-89. It is different from most bureaus of the state government in that it is a membership organization composed of all the companies writing compensation insurance in the state and presided over by a Special Deputy Commissioner of Banking and Insurance. The bureau, that is, the insurance companies which comprise its membership, adopt rules and regulations for its procedure and furnish such income as may be necessary for its maintenance. They choose its officers, members of committees and employes, subject, however, to the approval of the commissioner (Section 90).
Some years ago, the bureau promulgated with the approval of the commissioner "The New Jersey plan for the granting of workmen's compensation insurance to employers unable to secure it for themselves." The plan provides that an employer unable to secure insurance for himself, shall apply to the bureau for assistance. The bureau then designates a carrier to insure his risk and the designated carrier issues to the employer a policy to become effective not more than five business days after the date of assignment, provided the premium is paid to the carrier by the employer. "The policy shall be issued for a period of one year unless the employer shall request a short term policy." *Page 145 
9. "If, after the issuance of a policy, it shall appear that the employer is not, or ceases to be, in good faith entitled to compensation insurance, or if unusual and unexpected circumstances develop, the carrier which issued the policy shall have the right upon authorization of the governing committee of the bureau, to cancel the insurance in accordance with the conditions of the policy. Default in payment of any premium when due shall automatically be considered as lack of good faith. If a policy is canceled as above provided, the risk shall not again be assigned to any carrier by the bureau until it is fully satisfied that the employer is in good faith entitled to insurance."
The defendant company is a member of the bureau and has filed with the bureau an express acceptance of the New Jersey plan which I have outlined.
Complainant built its factory and made ready to start operations in the summer of 1939. It found itself unable to procure workmen's compensation insurance and applied to the bureau for aid. The bureau assigned the risk to the defendant company which issued to complainant a policy November 4th, 1939, to run for a period of one year. The rate was $2.25 per $100 of payroll. This, complainant paid. Upon expiration of that policy, the defendant company issued to complainant a new policy to run until November 4th, 1941. The rate was somewhat higher than the old rate, namely, $2.40 for employes in the manufacturing department and nine cents per $100 for office employes. This premium was paid in advance by complainant.
On December 20th, 1940, Mr. Klein, the assistant superintendent of the rating division of the bureau, wrote complainant that, effective November 4th, 1939, "we are approving" a rate of $15.70 per $100 of payroll for all complainant's employes, including clerical force. "We are authorizing the Aetna Casualty and Surety Company to revise the rate and consequent premium charged for both policies" — the one which had expired as well as the current policy — "in accordance with the above newly approved rating basis."
The following day, the company wrote complainant that the reclassification increased the premium on the expired *Page 146 
policy from $185.69 to $1,205.29, making $1,019.60 due the company. "You are, of course, aware that this risk is one assigned to us by the Bureau and that any premiums developed are to be paid for immediately. We must ask therefore that your check be mailed to us within the next ten days. Otherwise it will be necessary for us to cancel the risk which is now in force, leaving you without any insurance. You also are aware that the New Jersey Bureau will not issue a new policy until premiums on the old have been properly taken care of."
The company, on December 26th, wrote complainant a second letter stating that the additional premium on the expired policy was $1,034.50, instead of $1,019.60 and that the premium on the current policy was increased by $376.65, from $112.77 to $489.32. The company requested payment of $1,411.15 within ten days. Complainant did not pay and on December 31st, 1940, the company notified complainant that the current policy was canceled, to take effect January 11th, 1941. Before that day arrived, complainant filed its bill and obtained an order to show cause, including interim restraint against the company's giving effect to the cancellation.
Complainant's policy, which is in the standard form, contains a provision in harmony with R.S. 34:15-81, "This policy may be canceled at any time by either of the parties upon written notice to the other party, stating when, not less than ten days thereafter, cancellation shall be effective." The company argues that under the quoted provision of the policy and under the statute, it had a right to cancel the policy at its discretion and with or without cause. This is undoubtedly true if the provisions of the statute and of the policy relating to cancellation are unaffected by the New Jersey plan.
The plan does not seem to have the force of a rule or regulation promulgated by a governmental body pursuant to statutory authority. The functions of the Compensation Rating and Inspection Bureau may be found in R.S. 34:15-88, 89 and 90, and do not include the subject of furnishing insurance to employers unable to secure it for themselves. But *Page 147 
the plan has validity and force as a contract among the insurance companies whereby each agrees to insure the risks assigned to it in consideration of the identical agreement of the other companies. The defendant company says, however, it is no concern of complainant that the terms of this contract may have been violated since complainant was not a party thereto. A person for whose benefit a contract is made, though a stranger to the contract and to the consideration, may sue thereon. Herbert v.Corby, 124 N.J. Law 249; 125 N.J. Law 502. The third person need not be named in the contract but may maintain his action if he has become a member of the class for whose benefit the contract was made. Joslin v. New Jersey Car Spring Co.,36 N.J. Law 141; Lister v. Vogel, 110 N.J. Eq. 35. Complainant is not a mere incidental beneficiary of the defendant company's agreement which is embodied in the plan; he is one of the group, employers unable to procure insurance for themselves, whose relief was the principal, indeed the sole purpose of the plan.
A party can waive a statutory provision intended for his benefit, and not involving considerations of public policy.Shutte v. Thompson, 15 Wall. 151; 21 L.Ed. 123; Phybe v.Eimer, 45 N.Y. 102. The statutory right of cancellation by the insurer has, I believe, been effectively waived by the company's acceptance of the plan.
The effect of the plan on the cancellation clause of the policy must also be studied. The plan may be considered as an executory agreement to insure, and the policy as the fulfillment of that contract. In such case, the general rule is established that if there be a conflict between the two instruments, the later one controls. The preliminary contract is superseded by the final.Curtis-Warner Corp. v. Thirkettle, 99 N.J. Eq. 806; 101 N.J. Eq. 279.
"Until consummated, an executory contract is subject to modification. In all cases, the deed when accepted is presumed to express the ultimate intent of the parties." Long v. Hartwell,34 N.J. Law 116. It is a matter of intention and proof. The executory contract of the defendant company seems to have been this in effect: We will issue a policy in usual form and containing *Page 148 
the usual cancellation clause; but we agree not to exercise the right of cancellation except for certain causes. Such an agreement limiting the right of cancellation did not become void upon the issuance of the policy, but remained in force in accordance with the intention of the company.
So we reach the position that the policy can be canceled only in accordance with the terms of the plan. The paragraph dealing with cancellation has already been quoted. Defendant may cancel "upon authorization of the governing committee of the Bureau," but no such authorization is claimed. The plan also sets forth that "default in payment of any premium when due shall automatically be considered as lack of good faith," and that the policy may be canceled for want of good faith. I agree with the contention of defendants that the insurer may cancel without authorization of the governing committee upon default in the payment of a premium.
Complainant argues that the default which should automatically be considered as lack of good faith, is default in a premium on the policy which may be canceled because of the non-payment, not a premium on a policy carried by some other company or on another policy issued by defendant. Whether this is the correct interpretation, is a question which may await final hearing. For present purposes, it is enough that the question is really debatable.
But the company says that not only did complainant fail to pay the adjusted premium on the expired policy, but as well the additional premium on the current policy. Whether the whole additional premium which the company demands, or any part thereof is lawfully owing, is another question of much doubt.
The policy states a tentative premium for the policy period, $112.77, based on the estimated payroll of complainant. This was payable and was paid in advance. In the event the payroll should prove to be larger than anticipated, an additional premium would be payable. The company's claim is not based on a larger payroll, but on a higher rate. Annexed to the policy is the New Jersey standard workmen's compensation endorsement: *Page 149 
"This policy is issued by the Company and is accepted by this employer with the agreement that the rates of premium are subject to modification in accordance with the rate manual and rating plans established by the Compensation Rating and Inspection Bureau of New Jersey and approved by the Commissioner of Banking and Insurance of New Jersey. Such modification, if any, to be expressed by endorsement, naming the effective date thereof."
The modification of the premium rate is "to be expressed by endorsement naming the effective date thereof." In the absence of some custom or rule by which complainant is bound, this would seem to mean an effective date subsequent to the day upon which the rate is modified. The endorsement is added to all New Jersey workmen's compensation policies. Ordinarily, each party has a right to cancel the policy and may well be moved to do so if too high, or too low, a rate is named. But the right of cancellation would be seriously impaired if the change in rate could be made to relate back to the issuance of the policy. It would make of the policy a rather hazardous contract. The company citesEmployers Liability Assurance Corp. v. Hayes Const. Co.
(N.Y.), 153 N.E. Rep. 68. But there the rating plan to which the parties had agreed provided that adjusted rates should be made effective for a current policy as of the date of its issue, and therefore the Court of Appeals held the increased rate was retroactive. But it does not appear, though it may on final hearing, that there is any similar rule in New Jersey. See moreover R.S. 34:15-88 which seems to require that a rate shall be approved by the commissioner before it becomes effective.
Again, the defendants have not shown that the new rate has been fixed "in accordance with the rate manual and rating plans" established by the bureau and approved by the commissioner. My impression, which may be dissipated when the evidence is fully presented, is that the rate of $15.70 was determined by an employe of the bureau without regard to any rate manual or rating plans.
We now come to the question whether in this situation the Court of Chancery may interfere for the relief of complainant.
At the outset the company suggests that complainant needs no help; that it should pay the premiums demanded and *Page 150 
then bring an action at law against the company and there win back any excess over the lawful premiums. But in such an action, the complainant would be faced by the rule that if a person without mistake of fact, and without fraud or coercion pays a demand which is not enforceable against him, the payment is voluntary and cannot be recovered back. Camden v. Green,54 N.J. Law 591; Schaedel v. Liberty Trust Co., 99 N.J. Law 380.
Though the payment is made under protest, it is still considered voluntary. Koewing v. West Orange, 89 N.J. Law 539. Duress or coercion as used in this connection includes a threat of bodily harm or imprisonment, or of the detention or seizure of personal property without resort to legal proceedings. Berger v.Bonnell Motor Car Co. (Supreme Court), 4 N.J. Mis. R. 589;133 Atl. Rep. 778. Likewise, the knowledge that a government officer, if payment be not made, will take official action ruinous to the payor, where the payor cannot forestall such action by judicial process. Oceanic, c., Co. v. Stranahan,214 U.S. 320; 29 S.Ct. 671. Or the refusal of a public utility to furnish necessary service unless payment be made. Louisville,c., Co. v. Wilson (Ind.), 32 N.E. Rep. 311. But much beyond this we cannot go. A payment to a private person in order to avoid economic pressure seems to be a voluntary payment. Certainly the roundabout remedy which the company suggests is not free from pitfalls.
The defendants also vaguely suggest certiorari. Of course,certiorari does not lie against the company to determine the right of cancellation or the correct amount of the premium. Nor do I understand just what a certiorari against the bureau or the commissioner would bring before the Supreme Court for review. See, also, Strobel, c., Co. v. Sterner, 125 N.J. Law 622.
Defendants do not contend that an action for damages for breach of contract would provide a remedy.
The suit may be sustained as one for specific performance of a contract to insure. While this remedy is commonly pursued only for limited classes of contracts, such as those for the sale of land, its scope is much broader. "It is a mode of redress grounded upon the impracticability or inadequacy of *Page 151 
legal remedies to compensate for the damages which the party seeking it will suffer, by the default of the other in keeping his bargain." Brown v. Brown, 33 N.J. Eq. 650. Where performance of a contract in specie will alone answer the ends of justice, this court will decree specific performance. Shimer
v. Morris Canal and Banking Co., 27 N.J. Eq. 364;Restatement-Contracts § 358. Generally upon breach of a contract to insure, the aggrieved party can readily obtain other insurance and the cost of getting it furnishes an exact measure of damages. But in the present case, the affidavits indicate that complainant cannot get other insurance. Specific performance is the proper remedy. Taylor v. Merchants Fire Insurance Co., 9 How. 390;13 L.Ed. 187; Williston, Contracts § 1421.
Complainant argues that the bill may also be maintained under the heading of relief against a forfeiture, but I need not consider that theory.
Complainant must have the protection of an injunction pending the suit. Defendant company suggests that the preliminary injunction ought not to attempt to nullify the ten-day cancellation notice which had been given just before the bill was filed, but should leave until final hearing decision of the right of the company to give that notice. If the bill should eventually be dismissed and the injunction so framed fall, the company might then assert that the policy had been effectively canceled January 11th, 1941, and that the company was not liable in respect to any losses sustained by complainant since then. And the state might charge complainant with unlawfully carrying on its business, since that date without the insurance required by the statute. Surprisingly few reported decisions deal with the effect of an injunction which is subsequently dismissed. Le Branthwait v.Halsey, 9 N.J. Law 3; John Agnew Co. v. Board of Education,83 N.J. Eq. 49; Id. 336; Hosack v. Rogers, 9 Paige (N.Y.)461; Doughty v. Doughty, 10 N.J. Eq. 347; Lamb v. Ryan,40 N.J. Eq. 67; North British, c., Co. v. Lathrop,70 Fed. Rep. 429; 17 C.C.A. 175; Paul v. Fidelity, c., Co. (Mass.),71 N.E. Rep. 801, and Board of Public Utility Commissioners v.Lehigh Valley Railroad Co., 106 N.J. Law *Page 152 411, 422, are some of them, but they give little aid to the precise question before me. The matter is clarified, however, by reference to the purpose of a preliminary injunction. An essential function of such an injunction is to enable the court fully and deliberately to investigate the case. To that end, the injunction maintains the status quo so that the parties are in substantially the same plight when the final decree is entered as they were when the litigation began. State v. E.I. DuPont deNemours Powder Co., 79 N.J. Eq. 31; Gluck v. Rynda DevelopmentCo., 99 N.J. Eq. 788, 805; 100 N.J. Eq. 554; Benton v. Kernan,126 N.J. Eq. 343. Complainant had valid insurance when it applied to the court for relief, and it will have such insurance pending the suit, unless some new ground for cancellation arises. The defendant company shall be perpetually enjoined from claiming that complainant's policy became or shall become void pending the suit, pursuant to the cancellation notice of December 31st, 1940, and the company shall be enjoined pendente lite from giving a new notice of cancellation without leave of the court. For the protection of the company, complainant will be required to pay into court the additional premiums which the company asserts are due on both policies.