EUGENE B. SLEAR, ET UX. *v.* LENA JANKIEWICZ, ET AL.

[No. 133, October Term, 1946.]

*Decided July 8, 1947.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Joseph R. Byrnes* and *David P. Gordon,* with whom
were *Levy, Byrnes & Gordon* and *Herbert Levy* on the
brief, for the appellants.

*Joseph J. Rhem* for the appellees.

MARKELL, J., delivered the opinion of the Court.

This is an action of ejectment for possession of a strip
of land 13 feet long and from 8¾ to 10¾ inches wide,
on which is built a wall of defendants' garage.  From a
judgment for plaintiffs, defendants appeal.

In 1929 James Keelty owned in fee all the land in the
block on the east side of Augusta Avenue extending from
the north side of Cranston Avenue 225 feet to the south
side of Woodridge Avenue and running east 90 feet to a
15 foot alley.  In 1929 he laid the foundations for eleven
houses, Nos. 801-821, on Augusta Avenue, the corner
houses and lots No. 801 at Cranston Avenue and No. 821
at Woodridge Avenue to be respectively 20 feet 6 inches
and 24 feet 6 inches wide, and the others each 20 feet.
The houses were not built until 1940.

In 1931 Keelty and wife conveyed this block of land
to James Keelty, Inc.  On August 29, 1940 James Keelty,
Inc. leased this land to James Keelty Realty Corporation
for 99 years, renewable forever, reserving annual rents
of $90 each on the eleven lots.  The lease was signed by
each corporation by Keelty as president.

On February 5, 1940, while the houses were in course
of construction, the Realty Corporation sold the prop-
erty No. 801, subject to a $90 ground rent, to defendants
for $4,750, $500 paid, $500 to be paid on or before April
1, 1940, $2,000 on or before May 1, 1940, balance at date

of settlement (not stated). The contract of sale was signed by the vendor by James Keelty, Jr., "authorized officer of corporation." The building was completed before May 15, 1940, when defendants moved in. They have occupied the property ever since. On July 9, 1941, the Realty Corporation conveyed the leasehold interest to defendants by deed signed by Keelty, Sr., as president. Mr. Keelty, Sr., died in 1944. Mr. Keelty, Jr., testified that in February, 1940 when the property was sold to defendants, it was owned by the Realty Corporation. Whether the Realty Corporation was, strictly speaking, the equitable owner or merely had authority from James Keelty, Inc., to sell is not explained and is not material. In August, 1940 it acquired from James Keelty, Inc., the full leasehold interest it had contracted to convey to defendants. On July 9, 1941 it conveyed this leasehold interest to defendants by deed signed by James Keelty as president. In both the lease and the deed the lot was described as beginning at the corner, running thence northerly 20 feet 6 inches "to a point in a line with the center of the partition wall there situate and running thence easterly parallel with Cranston Avenue to and through the center of the said partition wall ninety feet to the west side of" the alley.

Each of the houses except the corner houses has a basement garage entered from the alley, i. e., from the east. No. 801 has a garage entered from Cranston Avenue, i. e., from the south. The garage is east of the basement of the house. The east wall of the house is the west wall of the garage. The roof of the garage, a concrete slab, is the floor of the back porch, from which steps lead down to the yard. After defendants' purchase in February, 1940 but before completion of the house, a Keelty agent suggested to defendants that modern automobiles are too long for a garage of the size planned for No. 801 in 1929. At this suggestion of their own agent, the Keeltys moved the north wall of the garage a few feet or inches to the north, with the result that it was built from $8\frac{3}{4}$ to $10\frac{3}{4}$ inches beyond 20 feet 6

inches from Cranston Avenue. The houses and the garage were completed accordingly.

On April 24, 1941 plaintiffs visited the property No. 803 with a Keelty agent and saw the adjoining properties Nos. 801 and 803 in the same condition as they now are with respect to walls and garage. The same day the Realty Corporation sold the property No. 803, subject to a $90 ground rent, to one of the plaintiffs (the mother) for $4,250, $100 paid, balance to be paid at date of settlement. The contract of sale, on the same printed form as defendants' contract, was signed by the vendor by James Keelty, Jr., "authorized officer of corporation." On May 23, 1941 the Realty Corporation conveyed this leasehold interest to plaintiffs by deed signed by James Keelty as President. In the description of the lot in the deed, the southern boundary is a line drawn easterly "to and through the center of the partition wall" there situate 90 feet to the west side of the alley.

After plaintiffs had occupied their property almost four years they discovered that defendants' garage wall encroached on the line of their paper title. In due course this suit followed.

The question presented is, whether plaintiffs acquired the property No. 803 subject to an implied grant to defendants, or an implied reservation, of an easement to use the strip of land in question for the wall of defendants' garage as it was used when plaintiffs bought on April 24, 1941 and when they received their deed on May 23, 1941. The lower court answered this question in the negative.

What easements are or are not created by implied grant or implied reservation has been the subject of many decisions in this state. Since *Mitchell v. Seipel,* 53 Md. 251, 36 Am. Rep. 404, a distinction has been made between an implied grant and an implied reservation. "The rule with respect to implied reservations is much more strict than that with respect to implied grants." *Hansel v. Collins,* 180 Md. 209, 215, 23 A. 2d 686, 698.

An owner cannot have an easement in his own land. But if during unity of ownership the owner of two properties uses one for the benefit of the other in such manner as would indicate existence of an easement if the properties were owned by different persons, "then, upon a conveyance of the [dominant] property so used an easement will be granted to the purchaser, provided the use has been such that the easement resulting from it would be of the class known as continuous and apparent, and would be necessary for the reasonable enjoyment of the property conveyed." *Eliason v. Grove,* 85 Md. 215, 225, 36 A. 844, 845; *Dinneen v. Corporation, etc.,* 114 Md. 589, 594, 595, 79 A. 1021. It is a "well settled principle that all apparent easements or *quasi* easements which are necessary to the reasonable enjoyment of the premises granted, and which have been, and are at the time of the grant, used, or allowed to be used, by the owner of the entirety for the benefit of the part granted, will pass to the grantee by implication." *Burns v. Gallagher,* 62 Md. 462, 474.

In the opinion last quoted Judge Alvey also stated the rule of construction regarding reservation of easements by implication: "For the principle is well settled, and it is founded in reason and good sense, that no easement or *quasi* easement can be taken as reserved by implication, unless it be *de facto* annexed and in use at the time of the grant, and it be shown moreover to be actually necessary to the enjoyment of the estate or parcel retained by the grantor. * * * In order to give rise to the presumption of a reservation of an existing easement or *quasi* easement, where the deed is silent upon the subject, the necessity must be of such strict nature as to leave no room for doubt of the intention of the parties that the adjoining properties should continue to be used and enjoyed, in respect to existing easements or *quasi* easements, as before the severance of ownership; for otherwise parties would never know the real purport of their deeds. * * * It is only in cases of the strictest necessity, *and where it would not be reasonable to suppose*

*that the parties intended the contrary,* that the principle of implied reservation can be invoked." 62 Md. 471, 472. (Italics supplied by the court in quoting the last sentence in *Jay v. Michael,* 92 Md. 198, 210, 48 A. 61, and in *Mancuso v. Riddlemoser Co.,* 117 Md. 53, 57, 82 A. 1051, Ann Cas. 1914A, 84.) In short, the rules regarding implied grants and implied reservations are both rules of construction. *Cf. Knight v. Mitchell,* 154 Md. 102, 105, 140 A. 74, 56 A. L. R. 1135; *Tiffany, Real Property,* 3d Ed., sec. 781; *Restatement, Property,* sec. 476.

In the instant case the use of the land occupied by the garage wall was continuous, apparent and, we think, not only "reasonably" necessary (*Greenwalt v. McCardell,* 178 Md. 132, 138, 12 A. 2d 522), but "actually" or "strictly" necessary, for the enjoyment of the corner property. The lower court held that "the encroachment was not so open, and notorious that the plaintiffs purchased their property subject to that easement." We take a different view. An easement is "apparent" (not necessarily open and notorious) "if its existence is indicated by signs which must necessarily be seen, or which may be seen or known on a careful inspection by a person ordinarily conversant with the subject." *McConihe v. Edmonston,* 157 Md. 1, 11, 145 A. 215, 219; *Tiffany, Id.,* sec. 784. The fact that the use of the land was an encroachment may not have been obvious, though it was easily ascertainable, but the use, *i. e.,* the easement, was apparent, open and obvious. This use was necessary for the existence of the property sold to defendants. What plaintiffs and defendants each bought was not a map and a doll's house, but a lot and a newly completed house (including a garage) for use and occupation, not for demolition or reconstruction. Neither plaintiffs or defendants could have supposed that plaintiffs were buying a wall of their neighbors' garage or that defendants were buying a garage without a north wall. "You take my house when you do take the prop that doth sustain my house."

When the Keeltys sold the corner lot to defendants, moved the wall, completed the wall and the house and delivered possession, defendants became the equitable owners of the property, including an easement, granted by implication, to use the land on which the wall is built. When plaintiffs bought the adjoining property defendants were in possession of their property. Defendants' possession put plaintiffs on inquiry and was constructive notice to plaintiffs of the rights of defendants which could have been ascertained upon inquiry. *DuVal v. Wilmer*, 88 Md. 66, 77, 41 A. 122; *Burns v. Gallagher, supra*, 62 Md. 473; *Dinneen v. Corporation, etc., supra*, 114 Md. 595, 79 A. 1021.

If, however, when plaintiffs purchased, no one had been occupying the corner property, and the Keeltys had held full legal and equitable ownership, we think, for the reasons already indicated, that plaintiffs would have taken their property subject to the same easement, reserved by implication.

Plaintiffs contend that defendants' claim amounts to a claim, not of an easement, but of the land in fee; that "there can be no easement, no incorporeal right, binding the servient tenement, the effect of which would be to deprive its owner of the right of use or possession thereof"; that "an easement is a right in the owner of one parcel of land by reason of such ownership to use the land of another for a special purpose *not inconsistent with a general property in the owner."* (*Clements v. Sannuti*, 356 Pa. 63, 51 A. 2d 267, 698. Italics the court's, quoting *Riefler & Sons v. Wayne Storage Water Power Co.*, 232 Pa. 282, 289, 81 A. 300, 301, in which a reserved "right to occupy so much of the land as they may consider necessary for a reservoir" was held to be an easement, *viz.*, a "right to make use of the land of another for a precise and definite purpose, not inconsistent with a general right of property in the owner.") In the case cited by plaintiffs the owner of two adjoining lots built a garage at the rear of both lots, approximately half on each. It was held that the purchaser of one lot did not

take it subject to an easement of exclusive possession of the entire garage by the owner of the other lot. The court said that "were this a case of a slight encroachment of a building upon or near the dividing line, as in numerous cases cited to us by appellee, somewhat different considerations would be involved." 51 A. 2d 700. The law does not forbid an owner to sell half a garage or other building—or even a few inches—but in the latter case clear evidence of intent to do so might be necessary.

In Maryland and other jurisdictions, apparently including Pennsylvania, an easement is consistent with the general right of property in the owner of the land, though the easement, as long as it exists, may require practically exclusive occupation of part of the land. An easement to maintain eaves projecting over the land of another may be acquired by prescription (*Cherry v. Stein*, 11 Md. 1, 25); likewise, an easement to use a wall on a neighbor's land to support one's house, and also to occupy the space intervening between the wall and his own land. *Barry v. Edlavitch*, 84 Md. 95, 115, 35 A. 170, 33 L. R. A. 294. In these cases the easements were acquired by prescription, but "easements of all kinds" may be acquired by implied grant in Maryland, including easements of light and air, which cannot here be acquired by prescription. *Knight v. Mitchell*, 154 Md. 102, 105, 140 A. 74, 56 A. L. R. 1135; *Janes v. Jenkins*, 34 Md. 1, 6 Am. Rep. 300; *Cherry v. Stein, supra; Lane v. Flautt*, 176 Md. 620, 6 A. 2d 228. See also *Bihss v. Sabolis*, 322 Ill. 350, 153 N. E. 684, 53 A. L. R. 907, encroachment of a building six and a half inches; *Slachter v. Olderman*, 116 Conn. 156, 164 A. 202, wall of garage; *Tiffany, Id.*, secs. 775, 782.

*Judgment reversed, with costs.*

MARBURY, C. J., filed the following dissenting opinion:

I am unable to agree with the holding of the majority of the court in this case that the use of the land occupied by the garage wall was "strictly necessary" for the enjoyment of the corner property. "Necessity" is a

word of much greater implication than "convenience," and it has generally been so construed. Ways of necessity over lands of others have been denied many times, because other means of ingress or egress are available. It is just as desirable to be able to get out of property by the most convenient method as it is to be able to house a car in the most convenient place. Yet in rights of way cases "convenient" has not been construed as meaning "necessary." I am at loss to understand why it should be so construed here.

The construction of the garage where it was placed was clearly a mistake. No one thought it was over the line. If a boundary between two properties is erroneously conceived to be at a certain place, the owner who thereby gets additional ground does not get title to it, even if he thus retains it for more than twenty years. It is held that his possession is not adverse because he did not intend to take a part of his neighbor's land. See *Cresap's Lessee v. Hutson,* 9 Gill at p. 27; 269; *Davis v. Furlow's Lessee,* 27 Md. 536; and *Hiss v. McCabe,* 45 Md. 77, in which the body of the opinion is just the opposite of the syllabus. We are now giving the appellant land, which does not belong to him, which he did not know he was occupying, which he had never consciously claimed, and of which he has had possession for only seven years. This is done on the theory of an implied grant or reservation, which, under our decision, quoted in the majority opinion, arises "only in cases of the strictest necessity, and where it would not be reasonable to suppose that the parties intended the contrary." How can it be held here, either that there is strict necessity, or that the parties intended to place the garage partly on the wrong lot? This extension of the doctrine of implied grant or reservation has so many possible implications that it should not be adopted by this Court.

I think the judgment should be affirmed.