6 N.J. Super. 148 (1950)
70 A.2d 529
HARRY NIESTAT, PLAINTIFF-RESPONDENT,
v.
EQUITABLE SECURITY COMPANY, A NEW JERSEY CORPORATION, MEYER LOBSENZ, SIDNEY LOBSENZ, NATHAN P. LOBSENZ, TRUSTEE, R. LOMAURS & SONS, INC., AND THE CITY OF PASSAIC, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 12, 1949.
Decided January 11, 1950.
*150 Before Judges JACOBS, DONGES and BIGELOW.
Mr. Meyer Lobsenz argued the cause for the appellants (Messrs. Spitz & La Cava, attorneys).
Mr. Samuel A. Wiener argued the cause for the respondent.
The opinion of the court was delivered by JACOBS, S.J.A.D.
This is an appeal from a judgment entered in the Chancery Division which determined that plaintiff had a valid right of way, restrained defendants from interfering therewith, and dismissed their counterclaim.
In 1862 Edo Kip, the owner of a tract of land in Passaic, caused a map thereof to be made upon which streets and lots were plotted. Lot No. 1 was approximately 114' x 50' and was located at the corner of Railway Avenue and Jefferson Street, Lot No. 2, approximately 109' x 50' and fronting on Railway Avenue was immediately in the rear thereof, and Lot No. 3, approximately 105' x 50' was immediately in the rear of Lot No. 2. Lot No. 4 was a long plot 150' x 50' fronting on Jefferson Street. The right of way claimed by the plaintiff, and disputed by the defendants, appears on the map in the form of an unnumbered plot eight feet wide and sixty-five feet long fronting on Jefferson Street, adjacent to Lot No. 4, and extending along Lot No. 1 for fifty feet and into Lot No. 2 for the additional fifteen feet. In January, 1868. Kip conveyed Lot No. 2 to Post by deed which contained the following, after a metes and bounds description and a reference to the map:
"Together with the right of way over a strip of ground 8 feet wide from Jefferson St. across the rear of lot No. 1 and adjoining Lot No. 4 on said map. The parties of the first part reserving the right of way over the rear of the lot hereby conveyed over a strip *151 of ground 8 feet wide for a distance of 15 feet along the southwest line of Lot No. 4, for the use and benefit of the future owners or occupants of Lot No. 4, said strip or right of way to connect with the strip or right of way before mentioned."
In July, 1869, Kip conveved Lot No. 4 to Conkling, a predecessor to plaintiff's title. This conveyance did not mention the right of way but referred to the map after a metes and bounds description. Kip also conveyed Lot No. 1, now owned by defendants-appellants, by a metes and bounds description and a reference to the map. This conveyance did not include title to the eight-foot strip; in fact, this strip was never conveyed by Kip and the defendants-appellants acquired title thereto through a tax foreclosure sale.
The plaintiff filed a bill of complaint in the Court of Chancery alleging that he was the owner of part of Lot No. 4 fronting on Jefferson Street, that he had an easement of right of way over the adjacent eight-foot strip and that the defendants were unlawfully interfering therewith and should be enjoined. The defendants moved to dismiss the bill on the ground that the plaintiff's easement had been extinguished by the tax foreclosure sale, but this motion was denied by Vice-Chancellor Lewis whose opinion is reported in Niestat v. Equitable Security Company, 138 N.J. Eq. 480 (Ch. 1946). No appeal was ever taken from this ruling, nor is any error now alleged with respect thereto.
On September 29, 1948, a pretrial order was entered which set forth that the parties had stipulated that the "easement which is the subject of this controversy has been enjoyed by the plaintiff and his predecessors in title for a period of upwards of 60 years except as it may have been affected by the claim of adverse possession or user interposed by the defendant." Thereafter the trial was held and testimony was introduced. The lower court found that this testimony failed to establish the adverse user alleged by the defendants and indicated that the right of way had been openly used in common by the defendants and the plaintiff, and their predecessors, for over thirty years. After the hearing was concluded the defendants sought and were granted leave to introduce *152 the prior deeds, particularly those from Kip to Post and Conkling, in support of the contention, which they then advanced for the first time, that no enforceable easement over the eight-foot strip had ever been created by Kip and that, consequently, the plaintiff should not prevail. The plaintiff contends, however, that Kip did create an enforceable easement to which he has succeeded; he does not rely additionally, as perhaps he might, on rights acquired solely by prescription.
We are satisfied that Kip intended to and did create a right of way in favor of the purchaser of Lot No. 4 and there are no bona fide purchasers involved who might be in a position to assert that they purchased their property without knowledge of the right of way. The map itself, to which all the pertinent conveyances referred, clearly disclosed the long narrow strip surrounded by Lots Nos. 1, 2 and 4, and was sufficient to indicate the grantor's valid establishment of an alleyway, even though not specifically named as such, for the use of the purchasers of the surrounding property. See Lennig v. Ocean City Ass'n., 41 N.J. Eq. 606, 608 (E. & A. 1886). Furthermore, the conveyance from Kip to Post might well be construed as a covenant between them that future grantees of Lot No. 4 would have a right of way along the eight-foot strip appearing on the map. The fact that express words of covenant were not used is not significant where the intent to covenant satisfactorily appears. See Coudert v. Sayre, 46 N.J. Eq. 386, 395 (Ch. 1890). Viewed as a covenant for the benefit of a third party, it may be enforced notwithstanding that the third party was a future grantee. See Lister v. Vogel, 110 N.J. Eq. 35, 40 (E. & A. 1932); Magna Manufacturing Co., Inc., v. Aetna Casualty and Surety Company, 129 N.J. Eq. 142, 147 (Ch. 1941). Finally, the pertinent circumstances disclosed that Kip at all times contemplated that there be an easement of right of way appurtenant to Lot No. 4 and although it may be that under the common law concept that "an owner cannot have an easement in his own land" (Slear v. Jankiewicz, 54 A.2d 137 (Md. Ct. of App. 1947); cert. den., 333 U.S. 827 (1948)), no easement could exist while his unity of ownership remained, no persuasive *153 reason is advanced to prevent its arising immediately upon severance. See Slear v. Jankiewicz, supra; Ansin v. Taylor, 262 Mass. 569, 159 N.E. 513 (Sup. Jud. Ct. 1928), and cases collected in 28 C.J.S., p. 687 (1941). In the light of all of the foregoing, we have concluded that even if the procedural propriety of the defendants' belated attack upon the existence of plaintiff's right of way be assumed, it must fail on the merits.
The sole remaining question relates to the validity of the lower court's action in dismissing the defendants' counterclaim setting forth that the plaintiff had erected a leader pipe on his premises which discharged water upon the defendants' lands substantially damaging their goods and property, and had installed an exhaust opening through which smoke and noxious odors were directed to the defendants' property. The appendix contains none of the testimony introduced in support of the counterclaim and the contentions pertaining thereto might well be dismissed without more (Phillips v. Klein, 5 N.J. Super. 176, 179 (App. Div. 1949)); we have, nevertheless, examined the original file including the transcript of testimony. The plaintiff testified that the leader pipe and its outlet were entirely on his property and that the water therefrom "runs off into the alley" and this testimony was apparently accepted by the lower court. We consider that the plaintiff's conduct was well within the general authority of a landowner to control and repel surface water on his property, recognized in numerous decisions by our courts. See Zamelli v. Trost, 132 N.J.L. 388 (Sup. Ct. 1945); affirmed, 133 N.J.L. 465 (E. & A. 1945); Nathanson v. Wagner, 118 N.J. Eq. 390 (Ch. 1935); McCullough v. Hartpence, 141 N.J. Eq. 499 (Ch. 1948).
The building on the plaintiff's property houses a luncheonette which has an exhaust fan on the side adjacent to the eight-foot right of way. One of the defendants testified that when the fan was used he "noticed" smoke and offensive odors. On the other hand, there was evidence indicating that the exhaust fan was small and that such incidental smoke and odor as was expelled did not interfere with the normal *154 enjoyment by defendants of their alley or other property. The lower court found that the testimony concerning the smoke and odors was "meager and inconsequential;" we agree that it fell far short of that required to establish that the operation of the luncheonette constituted an enjoinable nuisance. Cf. Hey v. Baime, Inc., 95 N.J. Eq. 502 (Ch. 1923); Stohf v. Passaic Pure Dye Works, 108 N.J. Eq. 46 (Ch. 1931).
The judgment is affirmed.